[Cite as *In re O.H.*, 2011-Ohio-5632.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: O.H.

C.A. No. 25761

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 10-9-683

DECISION AND JOURNAL ENTRY

Dated: November 2, 2011

WHITMORE, Judge.

{¶1} Appellant, Sharon H. ("Mother"), has appealed from the decision of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her minor child, O.H., dependent and placed her in the temporary custody of a relative. This Court reverses.

I

{¶2} Mother and David Lambright are the unmarried parents of O.H., born October 26, 1999. O.H. was in Mother's custody when these proceedings began. Mr. Lambright is not a party to this appeal.

{¶3} Summit County Children Services ("CSB") became involved with the family based on a September 13, 2010 referral. On September 24, 2010, the agency filed a complaint in juvenile court, alleging that O.H. was a dependent child under R.C. 2151.04(B) and (C). In its complaint, CSB alleged that Mother abuses alcohol, that she has been "repeatedly" hospitalized due to the effects of alcoholism, and that ten-year-old O.H. calls her twenty-year-old sister, Sarah, to get away from "the drinking, fighting, and yelling" in Mother's home.

{**¶4**}    Upon adjudication, the magistrate found that O.H. was a dependent child, but declined to find that the agency had engaged in reasonable efforts because CSB had not complied with his orders to start counseling for O.H. and to hold a family team meeting.  The trial judge overruled Mother's objections and found that O.H. was dependent under R.C. 2151.04(B) and (C).  At the conclusion of the dispositional hearing, the child was placed in the temporary custody of her sister and Mother's adult daughter, Sarah.  Mother has appealed and has assigned two errors for review.

Assignment of Error Number One

"THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE ITS INTERPRETATION AND APPLICATION OF R.C. §2151.04(B) & (C) TO APPELLANT ARE CONTRARY TO LAW."

Assignment of Error Number Two

"THE TRIAL [COURT] ERRED AND ABUSED ITS DISCRETION BECAUSE ITS JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{**¶5**}    Through her two assignments of error, Mother contends that the trial court judgment, finding O.H. to be dependent under R.C. 2151.04(B) and (C), is contrary to law and against the weight of the evidence.  Because these arguments are legally and factually related, this Court will address them together.

{**¶6**}    The trial court adjudicated O.H. dependent under both R.C. 2151.04(B) and (C). A finding under either subsection must be supported by clear and convincing evidence.  Juv.R. 29(E)(4) and R.C. 2151.35(A)(1).  Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, paragraph three of the syllabus.

{¶7}    R.C. 2151.04(B) defines a dependent child as one "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian[.]"   "'Adequate parental care' means the provision by a child's parent or parents, guardian, or custodian of adequate food, clothing, and shelter to ensure the child's health and physical safety[.]"  R.C. 2151.011(B)(1).  Thus, an adjudication under R.C. 2151.04(B) requires clear and convincing evidence that the child lacks adequate food, clothing, or shelter in consequence of the parent's mental or physical condition.

{¶8}    R.C. 2151.04(C) defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"  An adjudication under R.C. 2151.04(C) requires evidence that the parent's conduct is having "an adverse impact upon the child sufficiently to warrant state intervention." *In re Burrell* (1979), 58 Ohio St.2d 37, 39.  "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner."  Id.  Furthermore, an adverse impact that supports a finding of dependency and the intervention of the state must be more than an "upset" child or a "temporary unhappiness."  *In re Holzwart*, 3d Dist. Nos. 13-04-32, 13-04-33, 13-04-34 & 13-04-40, 2005-Ohio-1602, at ¶12.

{¶9}    A dependency finding based on a parent's use of an illegal substance or the abuse of a legal substance under either R.C. 2151.04(B) or (C) requires "some evidence that [the parent's] supervision of her children or the environment of her children has been affected in some negative way" by the behavior of the parent.  *In re R.S.*, 9th Dist. No. 21177, 2003-Ohio-1594, at ¶20.  See, also, *In re V.R.*, 9th Dist. No. 23527, 2008-Ohio-1457, at ¶20; *In re D.H.*, 9th Dist. No. 25095, 2010-Ohio-2998, at ¶13; *In re Z.P.*, 5th Dist. No. 2008CA00209, 2009-Ohio-378, at ¶20.

{¶10} In presenting its case, the agency called two witnesses: Kimberle Wilcox, the CSB intake social worker, and Sarah, who is Mother's adult daughter and the sister of O.H. CSB did not introduce any expert witnesses, medical records, school records, or court records of traffic or criminal offenses. O.H., who was nearly eleven-years-old at the time of the adjudicatory hearing, did not testify in court or in camera, nor was there any input from a guardian ad litem.

R.C. 2151.04(B)

{¶11} R.C. 2151.04(B) requires clear and convincing evidence that O.H. lacks adequate food, clothing, or shelter in consequence of the parent's mental or physical condition. CSB offered no evidence regarding food or clothing. As to shelter, Ms. Wilcox testified that Mother's house was appropriate, clean, and "they're able to *** meet essential needs." O.H. also spent some time at Sarah's home, and Ms. Wilcox testified that Sarah's home was appropriate, was well-stocked with food, and had working utilities. Ms. Wilcox had no complaints about Sarah's ability to care for or supervise O.H., and she testified that there were no background issues with either Sarah or her fiancé, with whom she lived.

{¶12} According to Sarah, O.H. would periodically call her and ask if she could come to her home, which was located five minutes away from Mother's home. Sarah testified that this typically occurred three or four times a week over the last two years. At the hearing, Sarah was directly asked why O.H. wanted to come to her home, and Sarah responded by testifying that O.H. enjoys being around her and that O.H. has a good time at her home. Sarah explained that, on those occasions, they would go to the park together, O.H. would watch her cable television, or O.H. would play with Sarah's nearly two-year-old daughter. O.H. would also do homework at Sarah's home. Additionally, Sarah said that when Mother is sleeping, O.H. might want to come

over and talk. Sarah testified that she gets along well with O.H. She also testified that she has a close and good relationship with Mother. Finally, Sarah reported that she is a "stay at home mother" and is willing to babysit O.H. at any time.

{¶13} "When a child is receiving proper care from her parents or relatives to whom the parent has entrusted the child's care, then the child is not a dependent child." *In re Utz* (July 27, 2000), 3d Dist. No. 3-2000-06, at *3, citing *In re Riddle* (1997), 79 Ohio St.3d 259, 262. The trial court concluded and CSB has argued that O.H. was harmed and, therefore, dependent because O.H. was making arrangements for her own care approximately three times a week through her periodic telephone calls to her sister. We disagree. According to Sarah, O.H. had been calling her and coming to her home off and on for nearly two years. Also, according to Sarah, O.H. did so largely because she simply enjoyed being in Sarah's home. If this qualifies as an arrangement for alternate childcare, then the "arrangement" was made long ago when O.H. initially started going over to Sarah's home. CSB has presented no evidence that Mother was not involved in creating or agreeing to such a plan at an earlier time. It is not reasonable to conclude that O.H. was making independent arrangements for her own childcare based on a dependency situation every time she went to visit her sister.

{¶14} Furthermore, "the *state's* interest under Section 2151.04, Revised Code, arises only if no one is meeting the obligations of care, support, and custody, which are owed by the parent." (Alteration sic.) *In re Z.P.*, 5th Dist. No.2008CA00209, 2009-Ohio-378, at ¶22, quoting *In re Darst* (1963), 117 Ohio App. 374, 379. Cases which cite a need for the parent to initiate alternate childcare plans are generally neglect-based, and/or they involve very young children who are not capable of any self-care or independent expression. O.H. was ten years of age when this case began. The record reflects that she is capable of expressing herself, and it

does not appear that she has made unwise choices. Furthermore, O.H. is merely spending time with her adult sister in a nearby home that has been deemed appropriate by CSB. CSB has not demonstrated that O.H. has been deprived of adequate food, clothing, or shelter in consequence of Mother's mental or physical condition. The evidence, therefore, fails to support a finding of dependency under R.C. 2151.04(B).

## R.C. 2151.04(C)

{¶15} Under R.C. 2151.04(C), CSB was obligated to have "specifically demonstrated in a clear and convincing manner" that Mother's conduct had an adverse impact on O.H. sufficient to warrant the State in assuming the child's guardianship. *In re Burrell*, 58 Ohio St.2d at 39. Such adverse impact "cannot be simply inferred[.]" Id.

{¶16} Because Mother's attorney withdrew her initial objection to the magistrate's decision regarding alcohol abuse, we do not specifically address that issue, but consider only whether CSB has appropriately demonstrated that Mother's conduct had an adverse impact on O.H. sufficient to warrant the State in assuming the child's guardianship. Nevertheless, because Mother's conduct is implicitly relevant to the remaining discussion, we note that CSB offered no evidence from "a medical or osteopathic physician, psychologist, or any health care professional who has been specifically trained or is experienced in providing treatment for or diagnosing alcoholism" or "evidence of excessive work absences attributed to alcohol abuse, repeated citations for driving while under the influence of alcohol[,] *** or prior criminal offenses directly attributed to alcohol abuse" to establish alcohol abuse or alcoholism. *State v. Tomlin* (1992), 63 Ohio St.3d 724, 727 and 727, n.1. (holding that trial court did not abuse its discretion in relying upon the testimony of a clinical psychologist as opposed to a medical expert in finding chronic alcoholism and suggesting alternative means of proof of alcoholism). Furthermore, the

agency presented no medical evidence that either of Mother's hospitalizations was alcohol-related or that it is likely that Mother may be hospitalized again. Ms. Wilcox, an intake social worker, conceded that she exceeded her authority in recommending treatment for Mother because she is not a drug and alcohol counselor. In addition, Ms. Wilcox did not observe Mother to be intoxicated during her visits to the home, nor did she find an empty refrigerator, a home littered with empty beer bottles, or other common indicia of alcohol abuse. Instead, Ms. Wilcox said the home was clean and appropriate. Sarah testified that she visited Mother's home two or three times a week and that Mother did not drink alcohol during those visits, nor did Mother appear to have been drinking prior to the visits.

{¶17} As evidence that Mother abuses alcohol or is an alcoholic, CSB has instead relied on anecdotal symptoms reported by lay persons, a practice that may be subject to misinterpretation and could suggest an incorrect diagnosis. See, e.g., *State ex rel. Kleja v. State Teachers Retirement Bd.*, 10th Dist. No. 08AP-326, 2009-Ohio-2047, at ¶44 (Medical Review Board found that alcoholism can mimic chronic fatigue syndrome).

Adverse Impact

{¶18} Assuming the record is sufficient to establish a condition of alcoholism or alcohol abuse, as we must, there is nevertheless no evidence in the record that O.H. has been adversely impacted by Mother's conduct. CSB did not introduce school records or testimony by school personnel that O.H. was having academic or attendance problems in school. Nor is there any evidence that O.H. was not being provided proper medical care, receiving proper nutrition, or being provided clean and appropriate clothing. CSB offered no evidence that O.H. had any medical, emotional, or social problems that were being neglected. There is no evidence that

Mother was failing to keep appointments for O.H. or otherwise failing to provide for her child's needs.

Hearsay

{¶19} In reaching its conclusion that O.H. was adversely impacted by Mother's conduct, the trial court relied on a statement by Ms. Wilcox in which she reported that O.H. said she went to Sarah's home to get away from fighting, yelling, and drinking in Mother's home. This statement was erroneously admitted over an objection on the grounds of hearsay.

{¶20} The statement was first reported by Ms. Wilcox as a direct quote from O.H. and was stricken by the magistrate upon an objection by Mother's attorney on hearsay grounds. The magistrate subsequently allowed virtually the same statement, albeit in the form of an indirect quotation, on the theory that it was part of Ms. Wilcox's investigation and upon the grounds that the investigator is permitted to explain what she has learned from O.H. as long as she does not use the child's exact words. Mother's attorney again objected, asserting that this is "just a different phraseology for hearsay statements." The magistrate refused to strike the statement. Mother has argued on appeal that the admission of this testimony was erroneous and prejudicial.

{¶21} The rules of evidence strictly apply to adjudicatory hearings. *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 233. Accordingly, hearsay is not admissible in an adjudicatory hearing unless the statement falls within a recognized exception to the hearsay rule. Evid.R. 802.

{¶22} Ms. Wilcox did not personally observe any yelling, fighting, or drinking in the home and could not testify to them of her own personal knowledge. See Evid.R. 602. Rather, she testified to what she claims O.H. told her in the course of her investigation. There are

evidentiary limits on the manner in which an investigator may testify regarding his or her investigation, however, and the trial court's interpretation in this case is too broad.

{¶23} An investigator may testify to what he or she has learned in the course of an investigation, provided the testimony does not include an out-of-court statement. In such a case, the testimony does not contain hearsay and is not subject to a hearsay challenge. *State v. Neal*, 2d Dist. Nos. 2000-CA-16 & 2000-CA-18, 2002-Ohio-6786, at ¶51.

{¶24} The testimony at issue here, however, did contain an out-of-court statement. Where the investigator's testimony includes an out-of-court statement, the statement may be admitted to explain the investigator's conduct in the course of an investigation or the further steps of the investigator, but may not be admitted for the truth of the matter asserted. See Evid.R. 801(C); *State v. Thomas* (1980), 61 Ohio St.2d 223, 232 (testimony was admissible to explain subsequent investigative activities of the witnesses and not to prove the truth of the matter asserted). See, also, *State v. Williams*, 10th Dist. No. 10AP-779, 2011-Ohio-4760, at ¶29 (holding that out-of-court statements to explain the course of an investigation and why the investigator did not pursue a particular individual as a suspect are not hearsay); *State v. Chandler*, 10th Dist. No. 10AP-972, 2011-Ohio-3485, at ¶16 (holding that statements made by one police officer to another are admissible to explain an officer's presence at the crime scene and not for the truth of the matter asserted); *State v. McGovern*, 6th Dist. No. E-08-066, 2010-Ohio-1361, at ¶38 (investigator's report of a victim's disclosures was admissible to explain how and why she referred the victim for a physical examination and psychological counseling and not for the truth of the matter asserted); *In re Sypher* (Mar. 11, 2002), 7th Dist. No. 01-BA-36, at *3 (reversing judgment because trial judge relied on hearsay statements included within guardian ad

litem's report); *State v. Blevins* (1987), 36 Ohio App.3d 147, 149 (statements were offered to show why and how detectives came to know defendant and were not offered for their truth).

{¶25} In this case, the investigator's testimony included an out-of-court statement, and that statement was offered for the truth of the matter asserted, i.e., to establish that Mother's conduct had an adverse impact on O.H., a necessary component of the charge of dependency. "Where the facts to be proven at trial and the substantive content of an out-of-court statement coincide, it can be presumed that the proponent is offering the statement for its truth." *State v. Richcreek*, 6th Dist. No. WD-09-072, 2011-Ohio-4686, at ¶22. Accordingly, we conclude that the out-of-court statement was admitted for the truth of the matter asserted, and that allowing the statement was error. The statement should have been excluded as hearsay.

{¶26} Where an out-of-court statement is erroneously admitted, it must still be evaluated for prejudice. The general presumption that a trial court judge, as trier of fact, considered only properly admissible evidence is overcome in this case because the trial judge explicitly relied upon this testimony in finding an adverse impact on O.H. See *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 439. See, also, *In re D.G.*, 9th Dist. No. 08-CA-0062, 2009-Ohio-2080, at ¶32. Consequently, the testimony is not available to support a finding that O.H.'s condition or environment had been adversely impacted under R.C. 2151.04(C).

Alcohol-related Hospitalizations

{¶27} The trial court found that O.H. was harmed by Mother's alcohol-related hospitalizations. The finding is not supported by the evidence in the record and is problematic for two reasons. First, there is no medical evidence that Mother's hospitalizations were alcohol-related. Second, the fact that a parent has been hospitalized twice over the course of three years,

per se, does not demonstrate an adverse impact that merits State imposition of a guardianship over that parent's child.

**{¶28}** CSB has argued on appeal that O.H. is adversely affected by these hospitalizations because they are likely to continue and Sarah would not have the authority to address a medical emergency if Mother were hospitalized again. CSB's argument is mere speculation. CSB has offered no medical evidence regarding the reason for either of Mother's hospitalizations and no medical evidence regarding the likelihood of a recurrence. Mother's medical prognosis and its potential effect on the child – particularly in the absence of any medical evidence of her condition – is not a matter for lay speculation. See *In re Smith*, (Jan. 2, 2002), 9th Dist. No 20711, at *7 ("Without any evidence from a medical expert, this Court does not understand how the trial court could make any conclusions about the future impact of this medical condition.").

Fighting in the Home

**{¶29}** The trial court found that O.H. was harmed by fighting in the home. The only evidence regarding fighting was Ms. Wilcox's testimony that O.H. told her that Mother's ex-husband had one "altercation" with his brother, who had been temporarily staying in the home. The evidence showed that the ex-husband "dragged [his brother] out of the house" and subsequently packed up his belongings and put them outside of the door. Ms. Wilcox was not in favor of the brother residing in the home anyway, and there is no evidence that O.H. was in harm's way during their dispute. In addition, Sarah, who visited Mother's home frequently, testified that the atmosphere in Mother's home was "calm." This is insufficient evidence on which to base a finding of an adverse impact on O.H.

{¶30} At this juncture, the finding of dependency in this case appears to be an excessive response in light of the evidence adduced. The agency must either come up with more evidence of the dependency of O.H. or resolve its concerns regarding medical consent with a less drastic solution. The "fundamental liberty interest" of parents in the care, custody, and management of their children is not absolute. *In re Murray* (1990), 52 Ohio St.3d 155, 157, quoting *Santosky v. Kramer* (1982), 455 U.S. 745, 753. Nevertheless, the State may not intrude into the parent-child relationship absent clear and convincing evidence in accordance with applicable laws. Because CSB failed to establish dependency under either R.C. 2151.04(B) or (C), the judgment of the trial court must be reversed. Mother's two assignments of error are sustained.

III

{¶31} Mother's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETH WHITMORE
FOR THE COURT

DICKINSON, J.
CONCURS

CARR, P. J.
DISSENTS

APPEARANCES:

DEREK CEK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

THOMAS LOEPP, Attorney at Law, for Appellee.

AMY RUSSELL, Guardian ad Litem.