[Cite as *In re J.D.B.*, 2019-Ohio-408.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: J.D.B., DEPENDENT/NEGLECTED CHILD | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2017-P-0032** |
| | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Juvenile Division, Case No. 2017 JCC 192.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Brandon J. Wheeler*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Neil P. Agarwal*, 3732 Fishcreek Road, #288, Stow, OH 44224 (For Appellant, Heather Butcher).

DIANE V. GRENDELL, J.

{¶1} Appellant, Heather Butcher, appeals the adjudication of the minor child, J.D.B., as a dependent and neglected child by the Portage County Court of Common Pleas, Juvenile Division. The issues before this court are whether an employee of a county department of jobs and family services may file a complaint to initiate juvenile proceedings; whether a court has discretion to deny a continuance on behalf of a litigant who was undergoing drug rehabilitation; whether a court may find that reasonable efforts were made to prevent a child's removal in the absence of specific instances of

such efforts; and whether a child may be found dependent and/or neglected when the child is not homeless and his or her basic needs are being met. For the following reasons we affirm the decision of the court below.

{¶2} On March 2, 2017, Alexandra Toth of the Portage County Department of Job and Family Services filed a Neglect/Dependency Complaint with respect to J.D.B. based on her own "knowledge, information, and belief." Toth alleged the following specific facts: "On March 1, 2017 Ravenna Police (RPD) ordered the removal of J.D.B. (D.O.B. 08/08/2003). His mother, Heather Butcher, brought him to stay with a family friend on February 24, 2017. She has not been heard from since that time and there is a 'missing person' report for her in Trumbull County. Heather is alleged to be drug involved. J.D.B.'s father, Darnell Butcher, is currently incarcerated in Federal prison."

{¶3} On the same date a shelter care hearing was held. The juvenile magistrate ordered J.D.B. committed to the interim pre-dispositional custody of the Portage County Department of Job and Family Services upon the determination that "neither parent could be located to care for the child and he was left in the care of a non-relative who could not reach [the child's] custodian." A guardian ad litem was appointed and an adjudicatory hearing was scheduled for April 4, 2017.

{¶4} On March 16, 2017, Toth filed an Amended Complaint for Neglect/Dependency with respect to J.D.B. containing the additional allegations: "Ms. Butcher is currently hospitalized for mental health issues and is expected to be unable to care for J.D.B. for a significant period of time," "has no housing available to her upon her release from the hospital," and "has * * * not provided any way for J.D.B. to receive medical attention during her absence."

2

{¶5} On March 23, 2017, Butcher filed a Motion to Dismiss the Amended Complaint on the grounds that "[t]he complaint was filed by PCDJFS's employee Alexandra Toth, a non-attorney." The Department of Job and Family Services filed a Response on April 4, 2017.

{¶6} On April 4, 2017, the adjudicatory hearing was held before a juvenile court magistrate. Prior to the start of the hearing, counsel for Butcher moved for a continuance "advising the court that he had learned on today's date [that] Mother was in an in-patient treatment program." The magistrate denied the motion.

{¶7} On April 14, 2017, a Magistrate's Decision was issued. The magistrate denied the Motion to Dismiss the Amended Complaint; found J.D.B. to be a dependent child pursuant to R.C. 2151.04(A), (B), and (C), and a neglected child pursuant to R.C. 2151.03(A)(2) and (3); and ordered J.D.B. to be placed in the interim predispositional custody of Portage County Job and Family Services.

{¶8} On April 17, 2017, Butcher filed an Objection to the Magistrate's Decision and, on May 4, 2017, Supplemental Objections. The Department of Job and Family Services filed its Response on May 24, 2017.

{¶9} On May 24, 2017, a hearing on objections was held.

{¶10} On June 19, 2017, the juvenile court issued a Journal Entry, denying Butcher's Objections.

{¶11} On June 21, 2017, Butcher filed a Notice of Appeal. On appeal, Butcher raises the following assignments of error:

{¶12} "[1.] The trial court erred in overruling the mother's motion to dismiss the complaints filed by an employee of the Portage County Department of Jobs and Family Services."

{¶13} "[2.] The trial court erred in not ruling on all of Mother's objections to the magistrate's decision."

{¶14} "[3.] The trial court erred in denying Mother a continuance of the adjudicatory hearing."

{¶15} "[4.] The trial court committed reversible error by not making proper reasonable efforts findings at the adjudicatory hearing."

{¶16} "[5.] The trial court erred in finding that the child was a neglected child under R.C. 2151.03(A)(2) and (3)."

{¶17} "[6.] The trial court erred in finding that the child was a dependent child under R.C. 2151.04(A), (B) and (C)."

{¶18} In the first assignment of error, Butcher argues "that the original filed complaint and the amended filed complaint by Ms. Toth constitutes an unauthorized practice of law, and therefore it constituted a legal nullity." Appellant's brief at 3.

{¶19} According to the Rules of Juvenile Procedure: "Any person having knowledge of a child who appears to be a juvenile traffic offender, delinquent, unruly, neglected, dependent, or abused may file a complaint with respect to the child in the juvenile court of the county in which the child has a residence or legal settlement, or in which the traffic offense, delinquency, unruliness, neglect, dependency, or abuse occurred." Juv.R. 10(A). "'Person' includes an individual, association, corporation, or

4

partnership and the state or any of its political subdivisions, departments, or agencies." Juv.R. 2(BB).

**{¶20}** Similarly, the Revised Code provides: "any person having knowledge of a child who appears * * * to be an unruly, abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the * * * abuse, neglect, or dependency allegedly occurred." R.C. 2151.27(A)(1); *compare State ex rel. Brooks v. O'Malley*, 117 Ohio St.3d 385, 2008-Ohio-1118, 884 N.E.2d 42, ¶ 10 (the "question of standing, that is, of who is a proper party to bring a complaint [pursuant to Juv.R. 10(A) and 2(BB)], is a procedural matter governed by the Rules of Juvenile Procedure") (citation omitted); *State ex rel. Lamier v. Lamier*, 105 Ohio App.3d 797, 801, 664 N.E.2d 1384 (8th Dist.1995) ("[t]hese [juvenile] rules control over an inconsistent statute purporting to govern procedural matters").

**{¶21}** Butcher maintains that, "[f]or all purposes in this case, Ms. Toth's original and amended complaint was, and is, [Job and Family Services'] complaint rather than Ms. Toth being the party in interest." Accordingly, if Job and Family Services "wishes to file a complaint with the juvenile court under R.C. 2151.27(A)(1), it must use its county prosecutor to do so." Appellant's brief at 4. Butcher's argument rests on the premise that "[a] public agency like a corporation must be represented by counsel, not an individual not licensed to practice law." *In re Lawson*, 98 Ohio App.3d 456, 465, 648 N.E.2d 889 (10th Dist.1994); R.C. 309.09(A) ("[t]he prosecuting attorney shall be the legal adviser of * * * county * * * boards" and "shall prosecute and defend all suits and actions * * * to which it is a party").

5

**{¶22}** We reject Butcher's position that Toth lacked the capacity to initiate the neglect and dependency proceedings on behalf of the Department of Job and Family Services. There is no dispute that, under both the rule and statute, Toth qualifies as a "person having knowledge of a child who appears to be * * * neglected [or] dependent." The determinative issue is whether, by filing and/or amending the Complaint, Toth was necessarily acting in a representative capacity on behalf of Portage County Job and Family Services' interests. We conclude that she was not doing so based on the plain meaning of the statute and rule, the fundamental purpose of neglect/dependency proceedings, and applicable case law.

**{¶23}** It is significant that neither Juvenile Rule 10(A) nor R.C. 2151.27(A)(1) require that neglect and dependency proceedings be initiated by an interested party. In contrast to the broad authorization of "any person" to file a complaint, the Juvenile Rules define a "party" to such action more restrictively as "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." Juv.R. 2(Y). By allowing any person with knowledge of an apparently neglected or dependent child to file a complaint, the rule and statute contemplate the initiation of such proceedings by persons regardless of whether they are ultimately deemed parties to the proceedings. *Compare In re Hitchcock*, 120 Ohio App.3d 88, 97, 696 N.E.2d 1090 (8th Dist.1996) (recognizing the juvenile court's "wide discretion in affording any individual party status"); *In re Surdel*, 9th Dist. Lorain No. 98CA007172, 1999 WL 312380, *5 (May 12, 1999) (recognizing that "[t]he question of

6

whether or not a children services agency is a party in the underlying [juvenile] case turns on the point at which the agency entered the case below"); *In re S.S.*, 2d Dist. Montgomery No. 22980, 2008-Ohio-294, ¶ 36 ("R.C. 2151.27(A)(1) allows 'any person' having knowledge of a child who is neglected or dependent to file a complaint in juvenile court; the statute does not require that person to be personally acquainted with a parent who is causing the dependency or neglect").

{¶24} Additionally, the position urged by Butcher is contrary to the underlying purpose of juvenile proceedings, which exist "[t]o provide for the care, protection, and mental and physical development of children subject to Chapter 2151," and whose provisions "shall be liberally interpreted and construed so as to effectuate [this purpose]." R.C. 2151.01(A). The filing of a complaint alleging the neglect or dependency of a child is primarily filed on behalf of the child, not any of the interested parties. *Compare In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 21 ("the goals of protecting and caring for children, in conjunction with the requirement of statutory flexibility in promoting those goals, result in proceedings that are less formal and less adversarial than in courts of general jurisdiction").

{¶25} Butcher's argument has been rejected by other appellate districts. In *In re F.B.*, 9th Dist. Summit No. 27762, 2016-Ohio-3434, the court of appeals ruled:

> Father has failed to demonstrate that the caseworker acted as a representative of CSB when she filed the complaints in this case. Instead, the record reveals that she herself was a "person" who had knowledge that the children appeared to be dependent. *See* R.C. 2151.27(A). The caseworker completed a form complaint, which was comprised primarily of her affidavit with facts about the children and their parents, with boxes checked for the alleged statutory bases of dependency and the interim and dispositional actions requested of the juvenile court. The caseworker filed nothing else with the trial court during this case nor did she represent the

7

agency at any court appearances. It is not disputed that CSB was represented by a licensed attorney throughout these proceedings after the complaint was filed.

*Id.* at ¶ 15.

{¶26} Similarly, the court of appeals in *In re Leftwich*, 10th Dist. Franklin No. 96APF09-1263, 1997 WL 202247 (Apr. 22, 1997), held:

Thus, any individual, attorney or non-attorney, may file a complaint in juvenile court concerning a child who the complainant believes appears to be a delinquent, abused, unruly or dependent child. Accordingly, because [the caseworker] Rae had knowledge about the children, she could file a complaint on their behalf and the trial court did not err in permitting the complaint to go forward.

*Id.* at *2. *See also Brooks*, 117 Ohio St.3d 385, 2008-Ohio-1118, 884 N.E.2d 42, at ¶ 9 (affirming the dismissal of a writ for prohibition claiming that the complaint filed by a non-attorney employee of a county agency was a nullity because, *inter alia*, "[b]oth the Cuyahoga County Department of Children and Family Services and its employee who filed the complaint are persons generally authorized by [Juv.R. 10(A) and R.C. 2151.27(A)] to file complaints of child neglect and dependency").

{¶27} In the present case, Toth's involvement was limited to the filing of the initial Complaint and a subsequent amendment as authorized by Juvenile Rule 10(A) and R.C. 2151.27(A). Notably, the Motion for Interim Order of Predispositional Temporary Custody, filed simultaneously with the Complaint, was signed by the assistant prosecuting attorney for Portage County as representative for Job and Family Services, as were subsequent filings. Accordingly, Butcher has not set forth a valid argument for dismissing the Complaint.

{¶28} The first assignment of error is without merit.

8

**{¶29}** In the second assignment of error, Butcher argues the appeal should be dismissed for lack of a final order with respect to her Objections to the Magistrate's Decision. Butcher acknowledges that the juvenile court "issued a journal entry overruling all Mother's objections," but contends there is no final order because the court "did not make any specific rulings regarding Mother's objections regarding the magistrate's denial of her continuance; that the magistrate considered evidence subsequent to the date of the complaint; that the magistrate did not make proper findings regarding PCDJFS's 'reasonable efforts' at the adjudicatory hearing[;] that the magistrate improperly found that the child was neglected[;] and that the magistrate improperly found that the child was dependent." Appellant's brief at 6.

**{¶30}** Juvenile Rule 40(D)(4)(d) provides: "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections." Where a juvenile court fails to comply with the Rule by ruling on timely filed objections, it has been held that no final order exists. *In re J.H.*, 8th Dist. Cuyahoga No. 106658, 2018-Ohio-4026, ¶ 14; *but see In re R.R.*, 9th Dist. Summit No. 27572, 2015-Ohio-5245, ¶ 15 ("a trial court's failure to rule on objections to a magistrate's decision will not cause this Court to dismiss an appeal from the trial court's final judgment") (citation omitted).

**{¶31}** In the present case, we hold that the juvenile court complied with Juvenile Rule 40(D)(4)(d) by expressly stating that it overruled Butcher's objections without exception. Butcher cites no case law for the proposition that each objection must be addressed individually. On the contrary, case law suggests that an express ruling applicable to all objections satisfies the Rule. *In re K.T.1,* 1st Dist. Hamilton Nos. C-170667, et al., 2018-Ohio-1381, ¶ 11 ("the juvenile court complied with [its] duty under

9

the rule" where it "ruled on the objections, stating * * * that it found all of them 'well taken'"); *Parrish v. Parrish*, 5th Dist. Knox No. 15CA4, 2015-Ohio-4560, ¶ 21 ("the trial court failed to specifically rule on the objections to the magistrate's decision" where it "failed to specifically state whether it is overruling or sustaining all, any, or part of the objections"); *compare Hinkle v. Hinkle*, 5th Dist. Ashland No. 00-COA-01372, 2001 WL 456411, *1 (Apr. 24, 2001) ("[w]hile the trial court did not provide significant analysis as to each objection, it plainly stated that all of the objections were overruled").

**{¶32}** The second assignment of error is without merit.

**{¶33}** In the third assignment of error, Butcher argues that the magistrate erred by denying her oral motion for a continuance of the adjudicatory hearing.

**{¶34}** Juvenile Rule 23 provides: "Continuances shall be granted only when imperative to secure fair treatment for the parties."

**{¶35}** "In evaluating a motion for a continuance, a court should note, inter alia : the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981).

**{¶36}** "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *Id.* at syllabus; *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 45 N.E.2d 763, paragraph one of the syllabus. "[A]n appellate court

will not interfere with the exercise of this discretion unless the action of the court is plainly erroneous and constitutes a clear abuse of discretion." *Buck* at 538.

{¶37} In the present case, counsel for Butcher sought a continuance at the start of the April 4 adjudicatory hearing:

> Your Honor, I received a call today from my client's mother, the grandmother in this case. Her daughter, my client the Mother, Heather Butcher, is currently in a detox program in Warren, Ohio, the First Step Addiction and Recovery Program. She will be there until this coming Saturday. She asked me to ask the Court on behalf of her daughter. Her daughter wanted to be here today, but her recovery -- and if she left the program she would fail and she wouldn't be able to complete it. I'm asking for just a one week continuance at a minimum, whatever the Court's schedule is. She gets out this coming Saturday. I'd ask the Court to consider. I would argue respectively [sic], your Honor, that this does allege * * * dependency and neglect, that * * * my client's rights are paramount in this case. They will be contested, and I ask the Court [to] allow her to participate. And I know it was set for hearing, and I know it's her fault for not being here so I understand all that as well, but I'm asking for a one time one week -- minimum one week continuance.

{¶38} We find no abuse of discretion. Admittedly, a one-week continuance is not unreasonable and Butcher had a significant interest in being able to present her own testimony at the adjudicatory hearing. These considerations, however, did not require the magistrate to grant the continuance. As acknowledged by counsel, Butcher's absence was her own fault. The date of the adjudicatory hearing was scheduled a month before on March 2. Yet the request for a continuance was not made until the day of hearing and came, not from Butcher, but from her mother on her behalf. Three witnesses were present at court to testify on behalf of Job and Family Services. Counsel claimed that a one-week continuance was necessary "at a minimum," but the magistrate had no assurance that this was accurate in light of the fact that counsel was

11

apparently unaware that his client was in rehab and unavailable to testify until notified by a third party. *In re J.E.*, 2017-Ohio-8272, 100 N.E.3d 151, ¶ 14 (3d Dist.) ("[t]he propriety of denying a request for a continuance is * * * supported when a defendant requests a continuance for a legitimate reason but also contributed to the circumstances giving rise to the request" and "[w]hen a defendant faces ongoing drug addiction and is without stable housing such that a continuance would not likely change the outcome").

**{¶39}** Butcher further argues that a one-week continuance would still have allowed for the dispositional hearing to be held within the ninety-day limit fixed by R.C. 2151.35(B)(1). Conversely, however, the juvenile court was already outside the thirty-day period for holding the adjudicatory hearing pursuant to Juvenile Rule 29(A). Thus, while the time constraints of neglect and dependency proceedings did not preclude the granting of the continuance, they were a factor supporting the reasonableness of its denial. As this court has recognized on prior occasions, it is often the case that a decision to deny as well as to grant a continuance may be encompassed in the court's exercise of its discretion. *DePizzo v. Stabile*, 11th Dist. Trumbull No. 2006-T-0027, 2006-Ohio-6102, ¶ 7.

**{¶40}** The third assignment of error is without merit.

**{¶41}** In the fourth assignment of error, Butcher argues the juvenile court failed to make proper findings regarding Portage County Department of Job and Family Services' reasonable efforts to prevent J.D.B.'s removal.

**{¶42}** At an adjudicatory hearing "at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency

12

that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(A)(1). The court making a reasonable efforts determination "shall issue written findings of fact setting forth the reasons supporting its determination," and "briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." R.C. 2151.419(B)(1).

{¶43} The juvenile court in the present case found: "Reasonable efforts based upon the child's health and safety were made to prevent the removal of the child from the home, to eliminate the continued removal of the child from the home or to make it possible for the child to safely return home and the continuation in the home would be contrary to the welfare of the child." The court incorporated the following factual findings made by the magistrate:

> 6. PCDJFS took physical custody of [J.D.B.], and initially placed him with maternal grandmother. Due to behavioral issues of [J.D.B.] while in grandmother's care, [J.D.B.] was next placed with maternal grandfather, where he is presently placed;
>
> 7. Alexandra Toth (Toth), the PCDJFS case worker, investigated the family and learned that Darnell Butcher, biological father of [J.D.B.], is in Federal Prison until 2029;
>
> 8. Toth communicated with family members of [J.D.B.], but none of them were willing to accept temporary custody of [J.D.B.], advising that they did not want to raise him;
>
> 9. Approximately one (1) week after the removal, Toth was able to locate Mother and discuss her situation over the telephone;

13

10. Mother acknowledged she was homeless, living out of a car. Mother further admitted to being a regular heroin user, spending between $150.00-$300.00 per day on the drug;

* * *

13. Mother acknowledged to Toth that she has a drug problem and is in need of treatment and counseling, admitting that due to these issues, Mother is unable to properly care for [J.D.B.];

* * *

16. Toth made referrals to Mother regarding treatment, although Mother was already aware of some treatment facilities; * * *.

{¶44} We find the juvenile court's findings of fact were sufficient to support its reasonable efforts determination. These findings detail Toth's efforts, in light of Butcher's homelessness, to place J.D.B. with a member of her family and to make referrals for treatment.

{¶45} Butcher contends that, although the juvenile court made a reasonable efforts determination, "no further explanation or details was provided or given." Appellant's brief at 9-10. Butcher fails to acknowledge the court's findings, quoted above, but rather relies on this court's decision in *In re H.C.*, 11th Dist. Portage No. 2014-P-0059, 2015-Ohio-3545, wherein this court reversed for failure to make proper findings. In *H.C.*, this court was "unable to determine from the record whether [the court's] findings * * * appl[ied] to any attempt to return H.C. to his home," and noted that "no other findings are provided with regard to reunification attempts." *Id.* at ¶ 44. *H.C.* is easily distinguishable inasmuch as Butcher's homelessness precluded reunification efforts at the time of the adjudicatory hearing.

{¶46} The fourth assignment of error is without merit.

14

**{¶47}** In the fifth and sixth assignments of error, Butcher argues the juvenile court erred in its determination that J.D.B. was neglected and dependent.

**{¶48}** In order to make a finding of neglect, the juvenile court had to determine by clear and convincing evidence that J.D.B. "lack[ed] adequate parental care because of the faults or habits of the child's parents, guardian, or custodian," and/or his "parents, guardian, or custodian neglect[ed] the child or refuse[d] to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being." R.C. 2151.03(A)(2) and (3).

**{¶49}** In order to make a finding of dependency, the juvenile court had to determine by clear and convincing evidence that J.D.B. was "homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian"; "lack[ed] adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian"; and/or his "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(A), (B), and (C). [1]

**{¶50}** In support of the neglect and dependency adjudications, the juvenile court adopted the following factual findings:

> 1. Deborah May (May) contacted the Ravenna Police Department on March 1, 2017, regarding [J.D.B.], who had been placed into May's physical custody by mother, and maternal grandmother. Mother and May have known each other for years and when [J.D.B.] was approximately two (2) years old, May had cared for him for a period of time;

---

1. We note that, in order to affirm the adjudication of neglect and dependency, it is only necessary to find that J.D.B. satisfies one of the conditions set forth under the respective definitions. "R.C. 2151.03 and 2151.04 each state several definitional bases for a finding of neglect and dependency and a trial court can base its adjudication on any one of the subjections of each statute." *In re D.H.*, 9th Dist. Summit No. 24879, 2010-Ohio-422, ¶ 6 ("[a]lthough the trial court found alternate grounds for its adjudication of neglect under R.C. 2151.03 and dependency under R.C. 2151.04, it was not necessary that it find more than one statutory basis for each adjudication").

15

2. May received [J.D.B.] from Mother with the understanding that Mother was going to follow up a few days later and provide May with documentation which would allow May to obtain medical care and other necessities for [J.D.B.] while he was in May's physical care;

3. Mother never returned to May's residence to provide the documentation;

4. May attempted to contact Mother a couple of time[s] a day for several days. After having physical custody of [J.D.B.] for about one (1) week and being unable to contact Mother over this time period, May went to the Ravenna Police Department to determine what she could do to continue to care for [J.D.B.];

5. Upon learning of the situation, including Mother's unknown whereabouts, Officer Tyler Lohr (Lohr), a police officer with the Ravenna Police Department, ordered a removal of [J.D.B.], and contacted PCDJFS to assist in the removal * * *.

{¶51} Butcher's principal contention against the neglect and dependency adjudications is that J.D.B. was receiving adequate parental care while in May's custody. With respect to neglect, Butcher argues that "there was no evidence presented that the child was suffering from inadequate parental care, or that if there was any, it was due to the faults or habits of Ms. May." Appellant's brief at 11. Likewise, with respect to dependency, Butcher argues "there was no evidence presented that the child was homeless or destitute * * *[,] lacked adequate parental care, as all of his basic needs were being met by Ms. May," or that "Ms. May's conduct had an adverse impact on the child." Appellant's brief at 13-14. As the Ohio Supreme Court has recognized, "the parent's voluntary act of temporarily placing the child with a responsible relative is an indicator of proper parental care," and "the care furnished by the relative can be imputed to the parent." *In re Riddle*, 79 Ohio St.3d 259, 263, 680 N.E.2d 1227 (1997). "In such situations, the state has no interest in assuming guardianship since the

16

obligations of care, custody, and support are being met." (Citation omitted.) *Id.*; *In re O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632, ¶ 13 ("[w]hen a child is receiving proper care from her parents or relatives to whom the parent has entrusted the child's care, then the child is not a dependent child") (citation omitted).

**{¶52}** While Butcher's statement of the law regarding neglect and dependency is accurate, that law does not apply to the facts of the present case. Contrary to Butcher's position, May, according to her own testimony, was not providing J.D.B. adequate parental care and was unable to do so because Butcher failed to provide her with the necessary authorization to properly attend to his educational and medical needs, a situation exacerbated by May's inability to locate or contact Butcher and caused by Butcher's drug addiction.

**{¶53}** May testified that she was messaged by J.D.B. from school because he "was getting in trouble." May "was not aware that [she] wasn't on any of the papers at school * * * until [this] happened." Upon learning that she could not communicate with school officials regarding J.D.B. since she "was not on the paperwork to talk to them," May "called the C.A.R.E.S. line asking advice and * * * went to the Ravenna Police Department."

**{¶54}** May testified similarly with respect to J.D.B.'s medical needs: "If something happened there was no medical I could do for him. * * * He needs counseling. I mean just things like that. I couldn't take him anywhere." Accordingly, May did not feel that she was capable of either ascertaining or addressing J.D.B.'s medical needs.

{¶55} In sum, Butcher was found to have a caused a situation where J.D.B. lacked adequate parental care thus justifying the neglect and dependency adjudications. *Riddle*, 79 Ohio St.3d at 264, 680 N.E.2d 1227 ("[j]ust because a child is safe, whether it be in a foster home or the grandparents' home, does not negate a finding the child is neglected because of the acts or omissions of the parents") (citation omitted); *In re K.E.A.*, 11th Dist. Portage Nos. 2011-P-0106 and 2012-P-0004, 2012-Ohio-4099, ¶ 72 ("[t]he fact that K.E.A. was receiving adequate care at the time of the hearings does not preclude a dependency adjudication").

{¶56} The fifth and sixth assignments of error are without merit.

{¶57} For the foregoing reasons, the adjudication of J.D.B. as a neglected and dependent child is affirmed. Costs to be taxed against the appellant.


THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., dissents, with Dissenting Opinion.

{¶58} Finding merit in Ms. Butcher's first assignment of error, I would reverse and remand, while finding the remaining assignments of error moot.

{¶59} I do not believe Ms. Toth had standing to file the complaint and amended complaint in this action. As we stated in *JPMorgan Chase Bank, Natl. Assn. v. Hudson*, 11th Dist. Ashtabula No. 2014-A-0068, 2015-Ohio-1490:

18

**{¶60}** "'Standing is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court-even a court of competent subject-matter jurisdiction-over the party's attempted action. [*Fed. Home Loan Mtge Corp. v.*] *Schwartzwald* [134 Ohio St.3d 13, 2012-Ohio-5017] at ¶ 22; [*State ex rel.*]*Tubbs Jones* [*v. Suster*]*,* 84 Ohio St.3d [70 (1998)] at 77 * * *; *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas,* 35 Ohio St.2d 176, 178, * * * (1973). But an inquiry into a party's ability to *invoke* a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction.

**{¶61}** "'A determination of standing necessarily looks to the rights of the individual parties to bring the action, as they must assert a *personal* stake in the outcome of the action in order to establish standing. *Ohio Pyro, Inc. v. Ohio Dep't. of Commerce,* 115 Ohio St.3d 375, 2007–Ohio–5024, * * * ¶27. Lack of standing is certainly a fundamental flaw that would require a court to dismiss the action, *Schwartzwald* at ¶ 40, and any judgment on the merits would be subject to reversal on appeal. But a particular party's standing, or lack thereof, does not affect the subject-matter jurisdiction of the court in which the party is attempting to obtain relief. *Tubbs Jones* at 77.' (Emphasis sic.) (Citations and parallel citations omitted.)" *Hudson* at ¶21-22, quoting *Bank of A., N.A. v. Kuchta*, 141 Ohio st.3d 75, 2014-Ohio-4275, ¶22-23.

**{¶62}** Ohio courts have consistently held that corporate officers and agents have no standing to file pleadings on behalf of the corporation. *See, e.g.*, *Smith v. Mighty Distributing of S.W., PA, Inc.*, 11th Dist. Trumbull No. 2004-T-0056, 2005-Ohio-1689, ¶10 (collecting cases.) I do not read Juv.R. 10(A) nor R.C. 2157.27(A)(1) like the majority. I believe the rule and the statute, when they refer to "any person" with

19

knowledge of potential child abuse may file a complaint refers to individuals with knowledge, such as a neighbor, or school teacher, acting on their own behalf, and not an agent of the department of job and family services, acting on behalf of the agency. The agency – here, PCDJFS – is the actual complainant, not Ms. Toth. In fact, the amended complaint in this case asks for multiple forms of relief Ms. Toth is incapable of providing. Thus, for instance, she petitions the trial court to give PCDJFS temporary custody or protective supervision of J.D.B.; to make a finding that PCDFS made reasonable efforts to keep J.D.B in his home, and was making reasonable efforts to return him there; and that the natural parents be ordered to pay child support. This last request is impossible: Ms. Butcher is a homeless drug addict, and Mr. Butcher is in federal custody.

{¶63} Rather, I look to R.C. 309.09(A), which designates the county prosecuting attorney as the legal advisor to county officers and agencies. I believe the Portage County Prosecutor was the proper person to file the complaint and amended complaint in this case. This comports with the view of the learned trial judge, who stated in his judgment entry that this was the "better practice." Further, when, as in this case, a complaint is filed by a non-attorney, striking the complaint is an appropriate remedy. *State ex rel. Brooks*, *supra* ¶13 (prohibition does not lie to prevent the juvenile court from exercising jurisdiction in a child neglect and dependency case since mother has an adequate remedy by way of a motion to strike the complaint); *see also State v. Block*, 8th Dist. Cuyahoga No. 87488, 2007-Ohio-1979, ¶6.

{¶64} I respectfully dissent.