DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} This case involves the temporary custody of a baby adjudicated as a dependent child. V.R. was born to an eighteen-year-old, unmarried woman who tested positive for alcohol, marijuana, and opiates while in the hospital to deliver the baby. The trial court adjudicated V.R. a dependent child and placed the baby with maternal relatives. The mother worked on her case plan objectives and cared for the baby overnight multiple times each week. Following the dispositional hearing, the trial court adopted the decision of the magistrate, over the mother's objections, and continued Children Services' temporary custody. The mother has *Page 2 
timely appealed from the trial court's judgment making a variety of arguments supporting two basic propositions: (1) the trial court incorrectly adjudicated V.R. a dependent child; and (2) the trial court incorrectly ruled at the disposition that it was in V.R.'s best interest to continue in the temporary custody of the Summit County Children Services Board. This Court reverses the adjudication of V.R. as a dependent child because Children Services failed to prove by clear and convincing evidence that the mother's actions adversely affected V.R.'s condition or that the intended living situation was such that it would adversely affect the normal development of a child.
 FACTS {¶ 2} On June 8, 2006, a young woman, Sarah R., gave birth to a healthy baby girl. Sarah told a nurse that she had come to the hospital earlier that day believing herself to be in labor. The hospital discharged her, telling her that she was not in labor at that time. Sarah told the nurse that she then smoked marijuana in an effort to ease her pain. A toxicology screen revealed the presence of alcohol, marijuana, and opiates in Sarah's system. A similar test performed on V.R. was negative for each of those substances. The hospital staff made a referral to the Summit County Children Services Board based on the results of Sarah's toxicology screen.
 {¶ 3} A Children Services employee conducted several interviews following the referral and then filed an affidavit alleging V.R. was a neglected and *Page 3 
dependent child. Children Services obtained emergency temporary custody of V.R. before she left the hospital. The agency agreed to place V.R. with her maternal grandmother on the condition that Sarah move out of that house immediately. She complied and obtained her own apartment. She then rode a city bus one hour in each direction to care for V.R. at the maternal grandmother's home.
 {¶ 4} At the adjudicatory hearing, a Children Services employee testified that, to her knowledge, V.R. was a healthy baby with no known medical problems. She further testified that she interviewed Sarah in the hospital shortly after V.R.'s birth. There was nothing about V.R.'s condition that caused her any concern. Sarah was changing the baby and dressing her when the social worker arrived.
 {¶ 5} The agency social workers testified that Sarah was eighteen years old, had no high school diploma, and lived with her mother and step-father. Sarah's medical records indicate that she told a social worker at the hospital that she had completed a drug treatment program about three years before the birth of V.R. Sarah did not have a job when V.R. was born, but had been receiving monthly social security income due to her father's death. She had also been attending a GED program until recently, when she had decided to "take[ ] a break" from those classes. This resulted in her not receiving a social security check the month before the interview. *Page 4 
 {¶ 6} Sarah told the social worker that her plan was to continue to live with her mother and step-father, who were willing to help her with the baby. She freely admitted to smoking marijuana after being sent home from the hospital just before giving birth, but denied drinking any alcohol. She also reported that hospital staff gave her pain medication before delivery that could explain the presence of opiates in her system. Her medical records, which were admitted into evidence at the adjudicatory hearing, reflect that a resident physician gave Sarah morphine before the toxicology sample was taken.
 {¶ 7} After speaking with Sarah, the social worker interviewed the baby's maternal grandmother and step-grandfather and inspected their home. The social worker testified that, although she would not necessarily deem the quantity adequate, she did find baby supplies in the home, including a bassinet, diapers, clothing, and food. She also acknowledged that the baby was born earlier than anticipated and Sarah had told her that she was in the process of obtaining WIC benefits.
 {¶ 8} The social worker testified that Sarah's parents raised concerns about their daughter's history of drug use and sometimes transient lifestyle. They also raised many concerns about V.R.'s likely father, who had a long history with Children Services and some criminal history as well. This man was later proven to be V.R.'s father. The social worker testified about the maternal grandparents' allegations against the father, including a history of violence against Sarah, a *Page 5 
history of drug use, and an outstanding felony warrant for his arrest. The maternal grandparents did not testify at either hearing. Sarah denied any history of violence and did not comment on the other allegations against the father. In the end, the social worker determined that "there [were] just too many risks . . . involved with allowing [V.R.] to return home from the hospital with [Sarah]." The social worker testified that the agency's allegations were supported by concerns about Sarah and the possible father of the baby. The agency did not have concerns about the condition of the baby.
 {¶ 9} Following the adjudicatory hearing, the magistrate determined that V.R. was a dependent child, but dismissed the neglect allegations. Sarah timely filed objections to the magistrate's determination that V.R. was a dependent child. The trial court did not immediately rule on those objections.
 {¶ 10} At the time of the adjudicatory hearing, the magistrate expressed a desire to continue the family placement with Sarah taking responsibility for babysitting while the maternal grandmother was working. Following the adjudicatory hearing, the maternal grandmother announced that she could no longer provide care for V.R. The court then allowed Children Services to place V.R with other maternal relatives. While V.R. was in the care of these other relatives, Sarah took parenting classes, worked toward her GED, gave weekly toxicology samples, and spent every other night taking care of V.R. at her relatives' home. *Page 6 
 {¶ 11} The magistrate then held a dispositional hearing. A Children Services caseworker testified that Sarah interacted well with V.R. and was able to feed, bathe, and dress the baby by herself. The caseworker indicated that the relative in charge of V.R.'s care had expressed some concern about Sarah's interest in getting up in the morning to care for the baby. Sarah was feeding and changing V.R. during the night, but was apparently not as quick to provide that care during the morning hours. The caseworker also testified that she was not aware of any incident where Sarah had failed to get up in the morning in order to care for V.R.
 {¶ 12} The caseworker testified that Sarah seemed capable of caring for V.R., but expressed ongoing concern about her judgment on the "the little things." By way of example, she pointed out that Sarah had been out of town for a weekend without calling to check on V.R. The guardian ad litem testified that Sarah "does a wonderful job taking care of [V.R.]." She further testified that Sarah's apartment was "immaculate and kept very nice."
 {¶ 13} Following the dispositional hearing, the magistrate found it was in V.R.'s best interest to continue in the temporary custody of Children Services and to continue living with her maternal relatives while Sarah continued to work on her case plan objectives. Again, Sarah timely objected to the magistrate's decision. The trial court overruled all of Sarah's objections and adopted the *Page 7 
magistrate's decision with respect to both the adjudication of V.R. as a dependent child and the disposition awarding temporary custody to Children Services.
 {¶ 14} The trial court's judgment entry reveals that V.R. was deemed a dependent child based upon "the fact that [Sarah] tested positive for alcohol and marijuana at the time of [V.R.'s] birth." The court acknowledged that Sarah "had a plan in place to provide for [V.R.'s] basic needs upon her release from the hospital and was willing to care for [the child]." The court, however, felt that smoking marijuana just before giving birth "demonstrated [Sarah's] lack of commitment to [V.R.'s] well-being." The adjudication of V.R. as dependent must be reversed because the Summit County Children Services Board failed to present clear and convincing evidence that Sarah's actions adversely affected V.R.'s condition or that the living situation was such that it would adversely affect the normal development of a child.
 DEPENDENT CHILD {¶ 15} Section 2151.04(B) of the Ohio Revised Code defines a dependent child as one "[w]ho lacks adequate parental care by reason of the mental or physical condition of [her] parents. . . ." Under Section 2151.04(C), a child may be adjudicated dependent if her "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." Rule 29(E)(4) of the Ohio Rules of Juvenile Procedure and Section 2151.35 of the Ohio *Page 8 
Revised Code require that an adjudication of dependency under either section must be supported by clear and convincing evidence.
 {¶ 16} "Clear and convincing evidence is that measure or degree of proof . . . which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In reA.R., 9th Dist. No. 22836, 2006-Ohio-1548, at ¶ 18 (quoting In reDukes, 81 Ohio App. 3d 145, 153 (1991)). This Court must "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Id. A reviewing court "should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." State v. Schiebel, 55 Ohio St. 3d 71, 74 (1990).
 SECTION 2151.04(B) {¶ 17} In this case, the trial court adjudicated V.R. dependent under both subsections (B) and (C) of the statute. Section 2151.04(B) of the Ohio Revised Code provides that a child is dependent if she "lacks adequate parental care by reason of the mental or physical condition of [her] parents. . . ." The Code defines "adequate parental care" as "the provision by a child's parent . . . of adequate food, clothing, and shelter to ensure the child's health and physical safety. . . ." R.C.2151.011(B)(1). A dependency adjudication focuses not on the fault of the parents, but on "the child's environment, including the condition of the *Page 9 
home itself and the availability of medical care and other necessities."In re T. W., 9th Dist. No. 23801, 2008-Ohio-109, at ¶ 11. The adjudication requires that Children Services present clear and convincing evidence of conditions adversely affecting the normal development of the child. Id. (quoting In re A.C., 9th Dist. Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, at ¶ 14).
 {¶ 18} In this case, the agency failed to present clear and convincing evidence of conditions adversely affecting V.R.'s normal development. Despite Sarah's positive toxicology screen at the hospital, Children Services did not prove any adverse effect on V.R. stemming from that exposure. The evidence showed that V.R. was healthy. She did not display any symptoms of exposure to drugs or alcohol and her toxicology screen was negative.
 {¶ 19} Children Services did not present evidence of any failure to provide adequate food, clothing, or shelter to the baby. There was no evidence that V.R. had failed to obtain proper prenatal care during the course of the pregnancy. Although Sarah was young and unemployed, the trial court's decision specifically acknowledged that she had a "plan in place to provide for [V.R's] basic needs." An agency worker testified that Sarah planned to continue living with her mother, who was willing to help with the baby. A caseworker found that the house was appropriate and contained supplies for the baby, including a bassinet, clothing, bottles, and diapers. Children Services approved that living situation and recommended it to the court for V.R.'s placement, after being assured that Sarah *Page 10 
would immediately move out of the house. The social worker who first interviewed Sarah at the hospital testified that she was caring for V.R., holding her, and changing her when she arrived. She expressed no concern for V.R.'s condition.
 {¶ 20} While smoking marijuana, especially while pregnant, is not a good parenting decision, the State is not warranted in assuming guardianship without clear and convincing evidence of an actual adverse effect on the child. When, as in this case, the mother had a plan for supplying adequate food, clothing, and shelter for the baby and the living conditions were appropriate, the state is not warranted in assuming guardianship. Therefore, the trial court erred in adjudicating V.R. a dependent child under Section 2151.04(B) of the Ohio Revised Code.
 SECTION 2151.04(C) {¶ 21} A child may be adjudicated dependent under Section 2151.04(C) if her "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." This Court has previously held that a mother's admitted chronic daily use of marijuana, outside the presence of her children, does not constitute clear and convincing evidence of dependency under Section 2151.04(B) or (C) in the absence of "some evidence that [the mother's] supervision of her children or the environment of her children has been affected in some negative way by her use of marijuana." In re R.S., 9th Dist. No. 21177, *Page 11 
2003-Ohio-1594, at ¶ 20. In considering prenatal use of illegal drugs, the Ohio Supreme Court has held that a newborn's positive toxicology screen, due to the mother's prenatal drug abuse, is sufficient for purposes of Section 2151.031(D) to deem the child per se an abused child. In re Baby Boy Blackshear, 90 Ohio St. 3d 197, syllabus (2000). Justice Cook's dissenting opinion in Blackshear points out that the majority deemed the baby's positive toxicology screen clear and convincing evidence of "injury that harms or threatens to harm the child's health or welfare" as is required under the relevant subsection of the abuse statute. Id. at 199 (quoting R.C. 2151.031(D)).
 {¶ 22} While this Court's decision in In re R.S. did not involve prenatal drug use, it was similar in that there was no evidence that the mother's admitted drug use adversely affected the children. It was also similar in that it addressed the same two sections of the dependency statute at issue in this case. The Blackshear case did involve prenatal drug use, but it was ongoing drug abuse that resulted in the baby being born with illegal drugs in his system. This case involves evidence of only one instance of prenatal use of illegal drugs by the mother that did not result in a positive toxicology screen for the baby. Despite factual differences, this Court considers both opinions useful in guiding the decision in this case.
 {¶ 23} The Ohio Supreme Court has held that, when considering a dependency adjudication under Section 2151.04(C), the conduct of the parent is *Page 12 
relevant "solely insofar as that parent's conduct forms a part of the environment of [the] child." In re Burrell, 58 Ohio St. 2d 37, 39
(1979). The Court went on to explain that, "[a]s a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention." Id. The Court emphasized that an adverse impact "cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." Id.
 {¶ 24} Sarah's positive toxicology screen at the time of the birth of V.R. is not clear and convincing evidence that V.R.'s "condition or environment" was "such as to warrant the state, in the interests of the child, in assuming . . . guardianship." R.C. 2151.04(C). "While this Court certainly does not condone a parent's use of an illegal substance or abuse of a legal substance, parents have a fundamental right to raise their children." In re R.S., 9th Dist. No. 21177, 2003-Ohio-1594, at ¶ 20 (citing Stanley v. Illinois, 405 U.S. 645, 657-658 (1972); In reMurray, 52 Ohio St. 3d 155, 157 (1990)). As this Court has previously held, an adjudication of dependency under either Section 2151.04(B) or (C) requires "some evidence that [the mother's] supervision of her child[ ] or the environment of her child[ ] has been affected in some negative way by her use of marijuana." Id. In this case, the evidence showed the child was born completely healthy and there was no evidence of any marijuana or alcohol in her system. As there was no evidence of an actual adverse effect on the child's condition or environment *Page 13 
sufficient to warrant state intervention, Sarah's positive toxicology screen and admission to the one time use of marijuana just prior to the birth of the baby is not clear and convincing evidence of dependency.
 {¶ 25} The other concerns, raised entirely by the baby's maternal grandmother, were largely denied by Sarah and failed to prove to be ongoing issues after V.R.'s birth. Many of the concerns focused on the influence of the baby's father. There is no evidence in the record that Sarah had any contact with him after the day V.R. was born. In response to Children Services' demands, Sarah was testing negative for drugs on a weekly basis. She left her mother's home and found her own apartment at the request of Children Services. The guardian ad litem testified that Sarah kept that apartment clean and neat. The testimony revealed that the agency had no concerns about V.R.'s condition. This case did not present clear and convincing evidence that V.R.'s condition or the environment Sarah is able to provide is "such as to warrant the state, in the interests of the child, in assuming the child's guardianship." See R.C. 2151.04(C).
 {¶ 26} The trial court erred in adjudicating V.R. a dependent child under Section 2151.04(C). Sarah's first assignment of error is sustained. Her other assignments of error are moot. See App. R. 12(A)(1)(c).
 CONCLUSION {¶ 27} The trial court erred in adjudicating V.R. a dependent child because the Summit County Children Services Board failed to prove by clear and *Page 14 
convincing evidence that the mother's actions adversely affected V.R.'s condition or that the intended living situation was such as would adversely affect the normal development of a child. Therefore, the adjudication is reversed, and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellee. *Page 15 
WHITMORE, P. J. CONCURS