[Cite as *In re H.K.*, 2020-Ohio-5416.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: H.K.
      C.K.

C.A. No.     29631

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 17 09 0726
                 DN 17 09 0727

DECISION AND JOURNAL ENTRY

Dated: November 25, 2020

SCHAFER, Judge.

{¶1} Appellant, H.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her two minor children in the legal custody of two different nonparents. This Court affirms.

I.

{¶2} Mother is the biological mother of H.K., born July 21, 2015; and C.K., born July 17, 2017. Mother has four other children who are not in her custody, but they are not parties to this appeal. The father of H.K. and C.K. ("Father") did not appeal from the trial court's judgment.

{¶3} On September 15, 2017, Akron Police removed these two children from the home pursuant to Juv.R. 6 because Mother had been arrested on outstanding warrants for several theft-related charges and Father was suspected of abusing then two-year-old H.K. Mother was later convicted and placed on community control for two years.

{¶4} Shortly afterward, Summit County Children Services Board ("CSB") filed complaints to allege that H.K. and C.K. were abused, neglected, and/or dependent children. The trial court later adjudicated both children dependent and placed them in the temporary custody of CSB.

{¶5} CSB's primary concerns about Mother's ability to care for her children were her low level of cognitive functioning, history of involving herself with abusive and controlling men, criminal history including offenses related to theft and domestic violence, and lack of stable housing and income. Mother initially participated in some reunification services during this case and made some progress toward reunification. H.K. was returned to Mother's home during August 2018, shortly after she gave birth to her youngest child, A.S.

{¶6} H.K. was again removed from Mother's home a few months later because, although Mother had engaged in in-home parenting instruction, she had not demonstrated the ability to discipline the child or to otherwise provide appropriate care for him. H.K. had serious behavioral problems and Mother was unable to control him and did not attempt to address his inappropriate behavior. CSB was also concerned about domestic violence between Mother and her current husband ("Husband"), who is not the father of H.K. or C.K. Husband is the father of A.S., who was also removed from Mother's custody in a separate case.

{¶7} During this case, Mother was charged with domestic violence for an incident between her and Husband. In addition to the violence in their relationship, CSB was concerned that Husband controlled Mother's actions and did not allow her to make parenting decisions for herself. Mother was also financially dependent on Husband.

{¶8} Throughout this case, H.K. was placed in the home of the maternal grandparents ("Grandparents"), except while he was returned to Mother's home. H.K. was placed in a separate

home from C.K. because of his serious behavioral problems. Several witnesses observed that H.K. and C.K. did much better living in separate homes, with frequent opportunities to visit each other.

{¶9}  C.K. was placed with a foster family, but eventually began having extended visits with W.R. and G.R., who were related to Husband and A.S.  A.S. was placed with that family, so C.K. was able to visit with her half sibling when she visited the home.

{¶10} Eventually, Grandparents and CSB moved for legal custody of H.K. to Grandparents, and CSB moved for C.K. to be placed in the legal custody of W.R. and G.R.  Mother alternatively requested that the children be returned to her custody.  Following a hearing before a magistrate on the competing dispositional motions, the trial court placed H.K. in the legal custody of Grandparents, and placed C.K. in the legal custody of W.R. and G.R.  Mother filed objections to the magistrate's decision, which were later overruled by the trial court.  The trial court placed the children in the legal custody of the respective nonparents.  Mother appeals and raises two assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT IT WAS IN THE BEST INTERESTS OF THE CHILDREN TO BE PLACED IN THE LEGAL CUSTODY OF OTHERS.

{¶11}  Mother's first assignment of error is that the trial court committed reversible error by placing H.K. and C.K. in the legal custody of nonparents rather than returning them to her legal custody.  An award of legal custody will not be reversed if the judgment is supported by a preponderance, or a greater weight, of the evidence. *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.  Our standard of review is whether a legal custody decision was against the manifest weight of the evidence. *Id.*  In considering whether the juvenile court's judgment is

against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶12} "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. The juvenile court is guided by the best interest factors set forth in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child with the child's parents, siblings, and other significant people in the child's life; the child's wishes; the custodial history of the child; the child's need for permanence; and whether any of the factors set forth in R.C. 2151.414(E)(7) through (11) have been established. R.C. 2151.414(D)(1)(a)-(e). There was no allegation or trial court finding that any of the factors set forth in R.C. 2151.414(E)(7) through (11) applied to the facts of this case.

{¶13} The juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. Of relevance here, R.C. 3109.04(F)(1) factors include the child's adjustment to home, school, and community; and the person more likely to facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

{¶14} Mother has argued that she complied with the requirements of the case plan, but "[t]his Court has repeatedly stressed that 'evidence of case plan compliance may be relevant to the trial court's best interest determination, but it is not dispositive.'" *In re S.D.*, 9th Dist. Summit No. 29415, 2020-Ohio-3267, ¶ 12, quoting *In re G.A.*, 9th Dist. Summit Nos. 28664 and 28665, 2017-Ohio-8561, ¶ 13. Moreover, the evidence was not disputed that Mother lacked the ability to care for either of these children without ongoing assistance from another adult, and Husband was not willing or able to provide her with parenting assistance for H.K. or C.K.

{¶15} While the children were in CSB custody, Mother's visits with them were supervised. Visitation supervisors often had to redirect Mother's inappropriate behavior and she did not always respond to the redirection. After A.S. was removed from Mother's custody, Mother tended to spend the visits doting on the baby and paid little attention to H.K. and C.K. Moreover, CSB remained concerned that Mother lived in a home with intimate partner violence and had not adequately addressed that threat to herself or her children. Husband also had repeatedly threatened to harm people involved in this case, including the proposed custodians.

{¶16} The children's interaction with their proposed custodians was consistently positive, however. H.K. had been living with Grandparents and witnesses agreed that there was an affectionate and positive bond between H.K and Grandparents. Grandparents were involved in H.K.'s case plan services and had ensured that his behavioral problems and developmental delays were being addressed. H.K.'s behavior had improved while in their care and he was well adjusted to living in their home. Grandparents planned to continue H.K. in counseling.

{¶17} Similarly, C.K. had connected well with her proposed custodians, W.R. and G.R., who were providing a temporary placement for the youngest sibling, A.S. Although C.K. had not yet lived with these proposed custodians, witnesses agreed that the child was comfortable in their

home and had adjusted to long visits there. The proposed custodians ensured that both C.K. and A.S. were able to regularly visit H.K., and the children had developed a growing bond with each set of custodians.

{¶18} Moreover, despite continual threats from Husband, the proposed custodians had been able to facilitate visitation between Mother and these children. The custodians had requested that the visits continue to be supervised at a neutral location, however, because they were concerned about Husband's threats and lack of cooperation with them.

{¶19} Because the children were too young to express their own wishes, the guardian ad litem spoke on their behalf. He recommended that H.K. be placed in the legal custody of Grandparents and that C.K. be placed in the legal custody of W.R. and G.R. He emphasized that, although the case had been pending for two years, Mother had not made enough progress to demonstrate that she could care for her children and she remained in a volatile relationship with Husband.

{¶20} The custodial history of the children had included two years of living in temporary placements. The children needed legally secure permanent placements and CSB had found those placements with the proposed custodians. The trial court reasonably concluded that legal custody to the respective custodians was in the best interest of H.K. and C.K. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WITH ITS CHILD SUPPORT/HEALTH INSURANCE ORDER.

{¶21} Mother's second assignment of error is that the trial court committed reversible error in its order for her to pay $80 per month in child support and $0 per month in cash medical support. Specifically, she asserts that the trial court was required by statute to attach a child support

worksheet and specify in more detail how the children's medical expenses would be paid. To begin with, Mother did not raise this issue in her objections to the magistrate's decision, so she has forfeited all but plain error. Juv.R. 40(D)(3)(b)(iv). Because Mother does not argue that this aspect of the trial court's judgment constituted plain error, she has failed to demonstrate reversible error. Mother's second assignment of error is overruled.

## III.

{¶22} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

LEONARD BREIDING, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

JORDAN KNABB, Attorney at Law, for Appellees.

JAMES BRIGHTBILL, Guardian ad Litem.