**[Cite as *In re J.D.*, 2025-Ohio-5116.]**

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: J.D.
    L.P.

C.A. Nos.    31358
                31359

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 24-07-00506
                 DN 24-07-00505

DECISION AND JOURNAL ENTRY

Dated: November 12, 2025

---

SUTTON, Judge.

**{¶1}** Appellant, S.H. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her two minor children dependent and placed them in the temporary custody of Summit County Children Services Board ("CSB"). This Court affirms.

## I.

**{¶2}** Mother is the biological mother of J.D., born February 25, 2023; and L.P., born August 8, 2020. The children's fathers did not file briefs in this appeal.

**{¶3}** On June 27, 2024, CSB received a referral about a post on social media that appeared to depict Mother holding a methamphetamine pipe with then one-year-old J.D. sitting on her lap. The social media post was never authenticated or admitted into evidence, but it was the basis of the initial referral in this case. CSB attempted to investigate by going to Mother's home

but was unable to meet with her until July 22, 2024. At that time, Mother told the caseworker that she knew that she did not have to cooperate with CSB, so Mother would not provide an oral swab for drug testing or agree to engage in a voluntary safety plan.

{¶4} Mother did admit that she had a history of methamphetamine abuse, but she denied any current drug use. Mother told the caseworker that she had completed a residential drug treatment program at Touchstone while pregnant with each of her children in 2020, and again in 2023. Mother insisted that she had been sober since 2023.

{¶5} CSB filed its initial complaint the next day, alleging that both children were dependent primarily because of Mother's history of methamphetamine use, including a history with CSB and the referral about her recent drug use. CSB further alleged that Mother had a history of untreated mental health diagnoses and domestic violence in her relationship with the alleged father of J.D. This case focused primarily on allegations that Mother had a long history of methamphetamine abuse, and the agency had received information that Mother had recently abused methamphetamine.

{¶6} The trial court ordered that CSB receive emergency temporary custody of J.D. and L.P. the same day, but the caseworker was initially unable to locate Mother and the children. The caseworker eventually reached Mother by phone and informed her that she was required to surrender the children. Mother brought the children to the agency later that day. After Mother arrived with the children, she submitted an oral swab, which tested positive for methamphetamine. Mother later admitted to the caseworker that she had relapsed because she was upset when she learned that her children would be removed.

{¶7} Mother submitted two more oral drug swabs on July 29 and August 1, and both tested positive for methamphetamine. When the caseworker collected the swab on August 1,

Mother admitted that she had again relapsed and used methamphetamine the prior weekend. CSB filed amended complaints to allege that Mother had submitted the three oral swabs that tested positive for methamphetamine.

{¶8} At the adjudicatory hearing held before a magistrate, CSB presented the testimony of its intake caseworker and a Forensic Fluids scientist, as well as an exhibit about the one positive drug screen from August 1, 2024.[1] Following the hearing, the magistrate adjudicated J.D. and L.P. as dependent. The trial court later placed the children in the temporary custody of CSB. Mother filed objections to the magistrate's adjudicatory decision, which were overruled by the trial court. Mother appeals and raises four assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ADMITTING THE FORENSIC LAB REPORT ABSENT ANY CHAIN-OF-CUSTODY DOCUMENTATION.

{¶9} Mother's first assignment of error is that the trial court erred in admitting CSB's sole exhibit into evidence. The exhibit consisted of a record from Forensic Fluids Laboratories about the positive drug test results of an oral drug swab that was submitted by Mother on August 1, 2024. The trial court admitted the exhibit under Evid.R. 803(6) as a business record of Forensic Fluids Laboratories. Mother asserts on appeal that the trial court erred in admitting the exhibit because the witness from Forensic Fluids who testified to authenticate the exhibit lacked adequate knowledge about who handled this specific sample and conducted the drug testing.

---

[1] Although the pages certifying the exhibit indicate that 12 pages are attached, the exhibit filed with this court consists of only the August 1 drug screen results, which is all that is challenged by Mother on appeal.

{¶10}   Even assuming the trial court erred in admitting the exhibit pertaining to the August 1 drug test, to demonstrate reversible error, Mother must establish not only that the trial court erred, but also that the error resulted in prejudice to her defense. *In re F.B.*, 2019-Ohio-1738, ¶ 30 (9th Dist.), citing *In re P.T.*, 2008-Ohio-4690, ¶ 17 (9th Dist.).  Civ.R. 61, which prohibits a reviewing court from reversing a harmless error of the trial court, provides:

> No error in . . . the admission . . . of evidence . . . is ground for . . . setting aside a verdict or . . . otherwise disturbing a judgment . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*See also* R.C. 2309.59.  Under Civ.R. 61, for this Court to find that an error is harmless, it must weigh the prejudicial effect of the error and "determine that, if th[e] error[ ] had not occurred, the . . . trier of the facts would probably have made the same decision." *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980), quoting *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349 (1950), paragraph three of the syllabus.

{¶11}   According to the testimony of the caseworker, at the time she collected the oral swab on August 1, Mother admitted to her that she had recently relapsed and used methamphetamine.  Therefore, Mother suffered no prejudice from the admission of the Forensic Fluids drug test results, as the trial court already had undisputed evidence before it that Mother had recently used methamphetamine.  Because any error in the admission of the exhibit was harmless, Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE DEPENDENCY ADJUDICATIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE.

## ASSIGNMENT OF ERROR III

THE DEPENDENCY ADJUDICATIONS ARE AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE.

{¶12} This Court will address Mother's second and third assignments of error together because, although they involve distinct legal concepts, they require a review of the same evidence. *See In re Z.C.*, 2023-Ohio-4703, ¶ 13. Mother asserts that the trial court's dependency adjudications of the children were not supported by sufficient evidence and were also against the manifest weight of the evidence.

{¶13} This Court's review under the sufficiency of the evidence standard requires us to "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *In re Z.C.*, at ¶ 13. From the adjudicatory hearing evidence, the trial court was required to determine that CSB established the adjudication of dependency by clear and convincing evidence. *In re H.P.*, 2022-Ohio-778, ¶ 28 (9th Dist.), citing *In re I.K.-W.*, 2019-Ohio-2807, ¶ 17 (9th Dist.); R.C. 2151.35(A)(1); and Juv.R. 29(E)(4). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} When reviewing whether an adjudication of dependency is against the manifest weight of the evidence:

> this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations in original.) *In re N.B.*, 2025-Ohio-528, ¶ 14 (9th Dist.).

{¶15} The trial court adjudicated the children dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" To establish dependency under R.C. 2151.04(C), CSB "was required to present evidence of conditions or environmental elements that were adverse to the normal development of the children." *In re A.C.*, 2004-Ohio-3248, ¶ 14 (9th Dist.), citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

{¶16} Although CSB presented evidence that Mother admitted to a history of domestic violence in her relationship with the alleged father of J.D. and that she had a few mental health diagnoses, the agency presented no evidence that the children had ever been exposed to domestic violence or that Mother's mental health diagnoses had any effect on them. Instead, CSB based its evidence of dependency primarily on Mother's admitted long-term abuse of methamphetamine and her recent relapses.

{¶17} On appeal, Mother asserts that CSB did not prove dependency under R.C. 2151.04(C) because it did not present evidence that her methamphetamine use posed a legitimate risk of harm to her children. Mother relies on a line of cases from this Court in which we have emphasized that "[a] dependency finding based on a parent's use of an illegal substance or the abuse of a legal substance under either R.C. 2151.04(B) or (C) requires 'some evidence that [the parent's] supervision of her children or the environment of her children has been affected in some negative way' by the behavior of the parent." *In re O.H.*, 2011-Ohio-5632, ¶ 9 (9th Dist.), quoting *In re R.S.,* 2003-Ohio-1594, ¶ 20 (9th Dist.). *See, also, In re D.H.,* 2010-Ohio-2998, ¶ 13 (9th Dist.); *In re V.R.,* 2008-Ohio-1457, ¶ 20 (9th Dist.).

{¶18} Mother relies on the above-cited cases to support her argument that a custodial parent's illegal drug use, in and of itself, does not necessarily pose a risk to a child's environment

that supports an adjudication of dependency under R.C. 2151.04(C). She emphasizes reasoning from these cases that a detrimental impact to the children from a parent's drug use cannot simply be inferred but must be proven at the adjudicatory hearing. As will be explained in more detail below, the facts of this Court's cases cited above are sharply distinguishable from the facts before us in this appeal.

{¶19} Beginning with *In re R.S.*, at ¶ 18-22, this Court reversed a juvenile court's adjudication of dependency under R.C. 2151.04(C) because the only evidence presented by CSB was that the mother admitted to regularly smoking marijuana, after the children went to sleep at night. The mother informed CSB that she never used marijuana around the children and kept the drug where her children had no access to it. CSB further admitted that it "had no evidence that [the mother's] use of marijuana affected the parenting of any of the four children." *Id*. at ¶ 14. The agency had not observed any evidence of marijuana or other drug use in the home and had no evidence that the mother ever had more than a minimal amount of marijuana in her possession. *Id*.

{¶20} At the time this Court decided *In re R.S.* and the other cited cases, possession of marijuana was illegal. The trial court had partially based its adjudication of R.S. on reasoning that the mother admittedly engaged in illegal activity and potentially faced incarceration if charged and convicted of marijuana possession. This Court rejected that reasoning and emphasized that, at that time, possession of less than 100 grams of marijuana was a minor misdemeanor that imposed a maximum penalty of a fine and not incarceration. *Id*. at ¶ 21.

{¶21} This Court applied similar reasoning in *In re V.R.*, 2008-Ohio-1457 (9th Dist.), which involved a mother who had just given birth to a child. In addition to the opiates that had been administered by the hospital, the mother tested positive for alcohol and marijuana at the time of the child's birth and admitted that she had used marijuana that day to ease her labor pain. *Id*. at

¶ 2, 14, 24. Although this Court again emphasized that it did not condone the mother's substance use, it emphasized that CSB had failed to demonstrate that the mother's use of marijuana or alcohol negatively affected her child's environment in any way, as the child was born healthy and Mother had prepared a suitable home for the child. *Id*. at ¶ 24-25.

{¶22} In *In re O.H.*, 2011-Ohio-5632, at ¶ 3 (9th Dist.), the alleged substance at issue was alcohol, which is not an illegal substance. This Court's reversal of the dependency adjudication under R.C. 2151.04(C) began by emphasizing that CSB had failed to prove that the mother did, in fact, have a drinking problem. *Id*. at ¶ 16-17. Moreover, the agency failed to prove that the child's needs were not being met or that her condition or environment warranted the state in assuming her guardianship. *Id*. at ¶ 18.

{¶23} Mother also cites *In re D.H.*, 2010-Ohio-2998, at ¶ 12 (9th Dist.), which again involved a parent's possession of a small amount of marijuana, with no evidence that the children had been exposed to marijuana or its use. CSB had attempted to prove that the parents had been manufacturing and selling crack cocaine out of the home, but CSB offered no evidence that anything seized from the home in a drug raid had tested positive for crack cocaine. *Id*. at ¶ 9. Consequently, this Court focused on the marijuana evidence that was presented. That case again emphasized that a parent's possession of a small amount of marijuana, in and of itself, does not demonstrate a deficiency in the child's home or environment to support an adjudication of dependency under R.C. 2151.04(C). *Id*. at ¶ 17.

{¶24} In sharp contrast to the cases cited above, the facts of this case do not involve a parent's use or possession of only marijuana or alcohol but instead involve Mother's ongoing use of methamphetamine, a far more dangerous drug that carries much more serious criminal penalties. Although CSB alleged in its complaint that it had prior involvement with Mother and that she had

a prior drug-related conviction, it is troubling to this Court that the agency failed to offer any such evidence at the adjudicatory hearing. As this Court has emphasized more than once, the complaint gave Mother notice about those allegations and evidence of a parent's prior criminal or juvenile court history is relevant to her parenting ability and is generally admissible in a juvenile court custody proceeding. *See, e.g., In re Z.H.*, 2022-Ohio-184, ¶ 12-16 (9th Dist.).

{¶25} In this case, the CSB intake caseworker testified about her contact with Mother. After receiving a 2024 referral that Mother was again using methamphetamine in the presence of the children, CSB investigated. Mother admitted to a lengthy history of methamphetamine abuse and that she had completed residential drug treatment programs in 2020 and 2023, while she was pregnant with each child. Mother denied any current drug use and insisted that she had been sober since 2023. On the day the children were removed from her custody, however, Mother used methamphetamine before she turned the children over to CSB. At that time, the children were only one and four years old. At those vulnerable young ages, they were completely dependent on Mother for care and supervision and were unable to protect themselves.

{¶26} Several days later, when the caseworker asked Mother about the positive drug screen from July 23, she admitted that she relapsed because she was upset about losing custody of her children. Mother's July 23 use of methamphetamine was not a one-time lapse, however, as she admitted that she relapsed again the weekend after the children were removed and her oral drug swabs from July 29 and August 1 both tested positive for methamphetamine.

{¶27} Mother has a long-term history of methamphetamine abuse that remains a serious problem for her. It is unclear whether Mother was compelled to engage in the prior drug treatment programs or did so voluntarily. Either way, she was unable to remain sober despite completing two residential drug treatment programs over the course of several years.

**{¶28}** This Court cannot analogize Mother's long-term methamphetamine abuse to the cases cited above. Given the drug at issue here, an inherent risk to the children's wellbeing can be inferred from Mother's ongoing use of methamphetamine. Methamphetamine is a Schedule II controlled substance. *See* Adm.Code 4729:9-1-02(C)(2). Its inherent risks and dangers were considered in its inclusion in the list of Schedule II Controlled Substances. The Controlled Substances Act defines a Schedule II drug as one that has "a high potential for abuse[,]" has an acceptable medical use "with severe restrictions[,]" and "may lead to severe psychological or physical dependence." 21 U.S.C. 812(b)(2)(A)-(C). Mother's possession and use of methamphetamine posed a risk to herself and to her young children who were unable to care for or protect themselves.

**{¶29}** Due to the dangers posed by methamphetamine, unlike possession and use of marijuana when it was illegal, the criminal sanctions attached to possession and use of a Schedule II controlled substance are far more severe. Mother's repeated possession and use of methamphetamine was a felony under R.C. 2925.11(A), (C)(1), even if she used or possessed a minimal amount. Mother admitted, and the drug tests confirmed, that she recently and repeatedly possessed and used methamphetamine. On July 23, 2024, Mother admittedly engaged in felony activity by using methamphetamine while she still had custody of her children, before she surrendered them to CSB.

**{¶30}** This case is not analogous to this Court's prior cases upon which Mother relies. CSB presented sufficient evidence to establish clearly and convincingly that Mother's admitted historical and ongoing abuse of methamphetamine, including while the children were in her sole custody before she surrendered them to CSB, posed an inherent risk to their safety and wellbeing and warranted the state in assuming their guardianship under R.C. 2151.04(C). Because the

evidence was not disputed, there is no need for this Court to weigh the evidence or conclude that the trial court lost its way in adjudicating the children dependent. Mother's second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

THE AGENCY FAILED TO UNDERTAKE REASONABLE EFFORTS TO PREVENT THE CHILDREN'S REMOVAL.

{¶31} Mother's final assignment of error is that CSB failed to make reasonable efforts to prevent the removal of the children from her home. R.C. 2151.419(A) required CSB to establish that the agency made reasonable efforts toward reunification or to prevent the continued removal of the children from the home:

> at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [disposition following adjudication] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]

(Alternations in original.) *In re L.F.*, 2025-Ohio-1643, ¶ 19 (9th Dist.), citing R.C. 2151.419(A).

{¶32} On appeal, Mother challenges the reasonable efforts of CSB to prevent the initial removal of the children, as well as its efforts to reunite the children with Mother after the removal. In the trial court, however, Mother did not challenge the agency's efforts to prevent the ongoing removal of the children from her custody. By failing to raise that specific argument, Mother forfeited all but plain error, but she makes no plain error argument. *See* Juv.R. 40(D)(2)(b); Juv.R. 40(D)(3)(b)(ii); *In re H.K.*, 2020-Ohio-5416, ¶ 21 (9th Dist.).

{¶33} This Court will confine its review to the reasonable efforts issue that Mother preserved for appellate review by raising it through her motion to set aside the magistrate's shelter care order and again in her objections to the magistrate's adjudicatory decision. *See In re N.B.*,

2025-Ohio-528, ¶ 28 (9th Dist.), citing Juv.R. 40(D)(2)(b). Mother argues on appeal, as she did in the trial court, that CSB did not make reasonable efforts to prevent the initial removal of her children from her custody because it failed to demonstrate that it gave "purposeful consideration [to] the emotional and psychological harms of removal."

{¶34} Mother cites no legal authority to support her implicit position that the agency was required to demonstrate that it had fully considered the emotional impact on her children. Instead, she relies solely on a scholarly article published in the New York University Review of Law and Social Change. *See* Trivedi, *The Harm of Child Removal*, 43 N.Y.U.Rev.L.S.C. 523 (2019). This article explicitly advocates for a change in current legal practice, i.e., what the author believes children services agencies should consider before removing a child from the parent's home, not what they are legally required to do. CSB had no legal obligation, however, to demonstrate as part of its reasonable efforts to prevent the removal of the children, the efforts it made to consider the emotional impact on the children. Because Mother has failed to demonstrate any legal error, her fourth assignment of error is overruled.

## III.

{¶35} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

STEVENSON, J.
CONCURS.

FLAGG LANZINGER, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶36} I respectfully dissent from the majority's conclusion that the agency met its burden of proving, by clear and convincing evidence, that these children are dependent under R.C. 2151.04(C). Before addressing the evidence presented in this case, I must express my concern about the timing of CSB's acquisition of drug screens from Mother. When the agency filed its initial complaints pertaining to each child, it had no evidence of recent drug use by Mother because she would not voluntarily submit to drug testing. The agency's dependency allegations focused primarily on a picture posted on Facebook that allegedly depicted Mother smoking

methamphetamine while holding one of the children. That picture was never authenticated or admitted into evidence in this case, yet it formed the basis for the initial removal of the children from Mother's custody.

{¶37} It was not until after the trial court ordered the removal of the children from Mother's custody that Mother was compelled to submit to drug testing. She then tested positive for methamphetamine multiple times. CSB filed two amended complaints to add allegations about Mother's positive drug screens. The adjudicatory evidence ultimately focused primarily on Mother's post-complaint use of methamphetamine. It is troubling to me that CSB filed its complaints and then attempted to develop a case against Mother.

{¶38} Moreover, I cannot agree that evidence of Mother's methamphetamine use, without evidence of a detrimental impact on her children, was sufficient to establish dependency. CSB presented no evidence that Mother used methamphetamine in the children's presence, that she kept the drug in a place that these young children had access to, or that her drug use prevented her from meeting the children's basic needs. The evidence instead established that Mother's home was suitable, and the children appeared to be well cared for.

{¶39} I would apply this Court's established case law that a parent's drug use, in and of itself, does not support an adjudication that a child is dependent. *In re O.H.*, 2011-Ohio-5632, ¶ 9 (9th Dist.), quoting *In re R.S.,* 2003-Ohio-1594, ¶ 20 (9th Dist.). *See, also*, *In re V.R.,* 2008-Ohio-1457, ¶ 20 (9th Dist.); *In re D.H.,* 2010-Ohio-2998, ¶ 13 (9th Dist.). It is fundamental that a parent's conduct is relevant to an adjudication of dependency under R.C. 2151.04(C) only if it is part of the children's environment and has a detrimental impact on them. *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). That impact cannot be inferred but must be demonstrated by clear and convincing evidence. *Id*.

**{¶40}** The majority declines to apply this Court's prior case law because those cases involved parents who used alcohol or marijuana, while Mother used methamphetamine. I do not agree that this case is legally distinguishable. At least three appellate districts have applied this same line of reasoning to cases involving a parent's use of methamphetamine, opiates, and/or cocaine. *See In re R.S.*, 2023-Ohio-3323, ¶ 19 (1st Dist.); *In re A.V.*, 2021-Ohio-3873, ¶ 24-25 (12th Dist.); *In re K.J.*, 2020-Ohio-3918, ¶ 12-14 (3d Dist.). In each of those cases, the appellate court reversed the dependency adjudication because the agency had failed to present evidence that the parent's mere use of methamphetamine had a detrimental effect on the child's environment. *See id*.

**{¶41}** Insofar as the majority attempts to distinguish this case because methamphetamine use is a felony, CSB presented no evidence to support such a distinction. The majority apparently infers that Mother could be caught using methamphetamine, arrested, and potentially convicted and/or incarcerated. Aside from speculating about a possible arrest and/or conviction that has not occurred, a parent's unavailability due to arrest or incarceration does not necessarily support a dependency adjudication if a suitable adult is available to care for the children in the parent's absence. *See In re O.V.*, 2024-Ohio-2620, ¶ 31 (9th Dist.), citing *In re T.D.*, 2016-Ohio-7729, ¶ 8-12 (9th Dist.).

**{¶42}** I certainly do not condone a parent's use of methamphetamine, but I cannot agree that CSB presented clear and convincing evidence to support an adjudication of dependency under R.C. 2151.04(C). Although I do not take issue with the majority's resolution of the first and fourth assignments of error, I cannot agree that the judgment was supported by sufficient evidence. For that reason, I would reverse the trial court's decision and remand the matter for the trial court to dismiss the complaint. *See* Juv.R. 29(F)(1); R.C. 2151.35(A)(1).

APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

DAVID M. LOWRY, Attorney at Law, for Father.

AVIVA WILCHER, Attorney at Law, for Father.

HOLLY FARAH, Guardian ad Litem.