[Cite as *In re H.S.*, 2022-Ohio-1082.]

STATE OF OHIO         )             IN THE COURT OF APPEALS
                      )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: H.S.                           C.A. No.     30162

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 20 04 0311

DECISION AND JOURNAL ENTRY

Dated: March 31, 2022

---

SUTTON, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother and Father[1] are the biological parents of H.S. (d.o.b. 11/11/19). The evidence indicates that they terminated any relationship prior to the child's birth. When the child was five months old, Mother gave the infant to a minor to watch for a few hours. When Mother did not try to retrieve the child until several days later, she was unable to locate the child and

---

[1] Father became a party to the case after paternity was established by genetic testing. Prior to that time, Mother's boyfriend had been identified as the child's father because he had signed a parenting affidavit in the hospital. Mother's boyfriend was dismissed from the case after the child's biological father was determined.

minor caregiver. She called the police for assistance. Mother did not know the name of the teenager with whom she had left the child and could only identify a general neighborhood where the teenager lived. After eventually locating the infant, the police took H.S. into protective custody pursuant to Juv.R. 6.

{¶3} Based on those circumstances, as well as suspicions of domestic violence between Mother and her live-in boyfriend and Mother's inability to provide for the basic needs of herself or the child, CSB filed a complaint alleging that H.S. was a neglected and dependent child. The agency later amended its complaint to add a factual allegation that Mother and her boyfriend were arrested after going together to the teenaged caregiver's home and breaking out a window with a chair on the day the agency filed its initial complaint. Mother and her boyfriend were charged with criminal damaging, while the boyfriend was also charged with violating a temporary protection order issued based on a prior charge of domestic violence against Mother.

{¶4} After the requisite hearings, the juvenile court adjudicated H.S. a neglected and dependent child and placed her in the temporary custody of CSB. The child was placed in a foster home, and the parents were granted supervised visitation. The juvenile court adopted the agency's case plan as an order. Under the case plan, Mother was required to (1) engage in individual counseling with a focus on addressing domestic violence victimization and poor decision-making relating to relationships, (2) engage in parenting education and demonstrate an understanding of appropriate parenting behaviors during interactions with the child, (3) visit regularly and consistently with the child, and (4) demonstrate the ability to meet the child's basic needs. Father's case plan requirements were similar, although he had no objective relating to counseling or domestic violence.

{¶5} Eleven months into the case, CSB filed a motion for permanent custody. The foster parents filed a motion to intervene, along with a motion for legal custody and a motion to restrain CSB from changing the child's placement. The agency had identified and approved a family member for placement and planned to transition the child into that home. CSB opposed intervention by the foster parents. After a hearing, the juvenile court denied the foster parents' motion to intervene and dismissed their motions for legal custody and to prevent the child's planned placement change. The agency transitioned H.S. into the home of her paternal uncle, his fiancée, and their two children.

{¶6} The matter proceeded to a hearing on the agency's motion for permanent custody. As a preliminary matter, Mother's attorney acknowledged that the evidence would show very minimal case plan compliance by the parents, and she asserted that Mother was requesting an award of legal custody of the child to the former foster parents. After considering the evidence adduced at the hearing, the juvenile court granted CSB's motion for permanent custody, terminated Mother's and Father's parental rights, and denied Mother's request for legal custody to the former foster parents. Mother filed a timely appeal and raises two interrelated assignments of error for consideration. This Court consolidates the assignments of error to facilitate discussion.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED MOTHER'S MOTION FOR LEGAL CUSTODY TO PREVIOUS FOSTER PARENTS AND GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother argues that the juvenile court's judgment was against the manifest weight of the evidence. This Court disagrees.

{¶8} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's

need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} As to the first prong, CSB alleged that H.S. could not or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). The juvenile court found that the agency met its burden of proof based on two of the five subsection (E) grounds alleged. Specifically, the trial court found subsection (E)(1) applicable to Mother and subsection (E)(4) applicable to both Mother and Father. Those subsections provide as follows:

> In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

> * * *

> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by

other actions showing an unwillingness to provide an adequate permanent home for the child[.]

{¶11} Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11. Nevertheless, this Court concludes that CSB proved by clear and convincing evidence both subsection (E) grounds to establish that H.S. could not or should not be returned to either parent.

{¶12} CSB sought the child's removal from Mother's home based on Mother's mental health issues which resulted in her involvement in domestically violent relationships, her demonstrated lack of parenting skills, and her inability to provide for the child's basic needs. The agency created case plan objectives designed to allow Mother to address these issues with the goal of reunification. Despite the agency's diligent efforts to assist Mother in remedying these issues, Mother failed to make any progress on her case plan objectives.

{¶13} Mother made an appointment for a mental health assessment at Community Support Services ("CSS") two months after the juvenile court adopted the case plan. She failed to appear for that appointment and CSS closed her case three months later when Mother had failed to engage in services. Five months later, Mother scheduled an assessment at Greenleaf Family Center ("Greenleaf") but did not attend that appointment. She later completed an intake appointment at Greenleaf twelve days before the permanent custody hearing, but she had not engaged in any counseling services. In addition, while Mother told the CSB caseworker that she planned to engage in parenting education at Greenleaf, she had only started those classes shortly before the hearing. By failing to engage in services in a timely manner, Mother had not even begun to remedy the mental health, domestic violence victimization, and parenting concerns underlying the child's removal.

{¶14} There was also evidence that Mother was unable to meet the child's basic needs. She failed to obtain appropriate housing despite securing an Akron Metropolitan Housing Authority voucher for Section 8 housing. She remained unemployed during most of the case. Although she claimed she was working by the time of the permanent custody hearing, she had not yet received a paycheck, and the caseworker had not been able to verify Mother's alleged employment. Mother further demonstrated an inability to meet the emotional needs of the child due to her sporadic and infrequent visitation with the child. Under the circumstances, CSB presented clear and convincing evidence that Mother had not remedied the concerns that led to the child's removal from Mother's home. *See* R.C. 2151.414(E)(1).

{¶15} Moreover, the juvenile court's finding that both parents demonstrated a lack of commitment to H.S. was not against the manifest weight of the evidence. *See* R.C. 2151.414(E)(4). Although CSB provided the parents with bus passes, neither visited the child on a consistent basis. When Mother complained that it was difficult to attend her scheduled 9 a.m. visits, the agency scheduled the visits for later in the day. Even so, Mother visited the child for the most part only when the caseworker transported either Mother or the child to the location of the visit. There was no evidence that Father provided any support for the child. While Mother brought some clothing and paid for the child's meal at a restaurant on one occasion, she made no other efforts to support the child. For the above reasons, this Court concludes that CSB established its first-prong allegation that H.S. could not or should not be returned to either parent. *See* R.C. 2151.414(B)(1)(a).

{¶16} The agency further proved that it was in the child's best interest to be placed in the permanent custody of CSB. H.S. never lived with Father and had negligible contact with him. While the child lived with Mother for the first five months of her life, H.S. was in the temporary

custody of CSB for the remaining 17 months of her life until the permanent custody hearing. During that time, the child lived first with foster parents, who provided a safe and stable home environment for her for just over a year. There were no appropriate maternal relatives with whom the agency could place H.S. As soon as the child's paternity was established, the agency investigated a paternal relative identified by Father. After a background check of all household members, CSB approved the child's paternal uncle and his fiancée for placement in the interest of securing the least restrictive option for the child. *See* Ohio Adm.Code 5101:2-42-05(A)/(E)(1)/(F)(2).

{¶17} H.S. was bonded with her prior foster parents but also developed a strong bond with her paternal uncle, his fiancée, and their two children. The child is comfortable and happy in her uncle's home. She had not had contact with her prior foster parents for five months by the time of the permanent custody hearing. The caseworker and guardian ad litem both testified that the child had no bond with Mother or Father due to their failure to visit the child on a consistent basis.

{¶18} At less than two years old, H.S. was too immature to express her desire regarding custody. The guardian ad litem opined that an award of permanent custody would be in the child's best interest. While the child's adoption would have to be approved by the probate court, the child's uncle was providing an appropriate home and wanted to adopt H.S. Although an adoptive parent could not be compelled under law to allow the biological parents to have contact with an adopted child, the uncle had indicated to both the caseworker and guardian ad litem that he was willing to allow both parents to maintain contact with H.S. for as long as those relationships aligned with the child's best interest.

{¶19} H.S. had lived in three different homes before she was two years old and required the stability of a permanent home. Neither parent demonstrated the ability to provide a safe and

stable home for the child. Father did not engage in parenting education, had no steady employment or appropriate housing, and failed to take advantage of his liberal opportunities to visit with the child who was placed with Father's brother. Mother did not attempt to engage in mental health services or parenting education until immediately prior to the permanent custody hearing and had not addressed the issues that put the child at risk. Mother had not obtained appropriate housing or verifiable employment and could not provide for the child's basic needs. Significantly, Mother visited only sporadically with the child, and there was no discernible bond between the two.

{¶20} The child's uncle was willing to adopt the child and provide her with a permanent home. H.S. had adjusted well to her uncle's home, developed a strong bond with both adults and her two cousins in the home, and had many opportunities to interact with extended family in the area. The caseworker testified that placement with family, even through adoption, is a less restrictive option, as the parents might yet have access to the child in a family situation. In addition, adoption by a family member would give a child familial historical context as the child would grow up with biological family.

{¶21} While the child's prior foster parents indicated an interest in legal custody of H.S., that would have required yet another disruption in the child's life. Moreover, the foster father testified that he and his wife would have sought to adopt H.S. if the child was available for adoption, and that "there was always that maybe hope that that would happen[.]" The foster father testified that he learned during foster care training that legal custody could lead to adoption if the parents abandoned the child. Thereafter, the guardian ad litem testified that the foster mother, while telling her that Mother frequently canceled visits, asked if she and her husband could adopt H.S. should they obtain legal custody and later be able to show that the parents abandoned the child. This Court emphasizes that by all accounts Mother and the foster parents had a mutually

agreeable relationship and that the foster parents were supportive of Mother's desire for reunification or, at a minimum, ongoing involvement in the child's life. Nevertheless, while there was no evidence that the foster parents would eventually sever Mother's relationship with the child, there was recognition that an award of legal custody to the foster parents in this case might not remain the child's permanent disposition or necessarily preserve Mother's relationship with the child.

{¶22} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of H.S. to CSB. Mother and Father made minimal to no progress on their case plan objectives. Neither demonstrated that they could provide for the basic needs of the child. Neither established a bond with the child due to inconsistent visitation. Mother failed to address her mental health issues and lack of proper parenting skills. Under these circumstances, CSB established by clear and convincing evidence that an award of permanent custody was in the best interest of the child. Accordingly, the juvenile court's judgment terminating Mother's and Father's parental rights and placing H.S. in the permanent custody of the agency was not against the manifest weight of the evidence.

{¶23} This Court further rejects Mother's argument that the juvenile court erred by denying her request to place the child in the legal custody of the former foster parents. It is well settled that, when an award of permanent custody is in the best interest of the child, then legal custody to any person necessarily is not. *See, e.g., In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 15. Based on the above reasoning, Mother's assignments of error are overruled.

III.

**{¶24}** Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, P. J.
CONCURRING.

{¶25} I concur with the majority's opinion affirming the juvenile court's award of permanent custody. The evidence supported the juvenile court's first-prong finding that the child could not or should not be returned to either parent. Moreover, upon consideration of all the best interest factors as applied to the facts in this case, I cannot say that the juvenile court's judgment was against the manifest weight of the evidence. *See In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56, 64 (holding that no best interest factor carries more weight than any other and that the availability of options short of the termination of parental rights is not controlling); *In re G.H.*, 9th Dist. Lorain No. 08CA009391, 2008-Ohio-4154, ¶ 21 (relying on *In re Schaefer* at ¶ 64 to emphasize that "in considering a motion for permanent custody, a trial court is not obligated to find that permanent custody is the only available option, nor must the trial court conclude that there is clear and convincing evidence that no suitable [third-party] was available for placement before granting such a motion.").

{¶26} I write separately, however, to express my concern that a legally secure permanent placement for the child might nevertheless have been achieved without a grant of permanent custody to CSB. *See* R.C. 2151.414(D)(1)(d). The child's former foster parents had expressed an

interest in obtaining legal custody of H.S., a disposition which would have provided a permanent placement for the child, *see* R.C. 2151.42(B); *In re A.P.*, 9th Dist. Lorain No. 20CA011638, 2021-Ohio-1229, ¶ 12, while preserving the parents' residual parental rights. Accordingly, H.S. would have maintained a connection with both her maternal and paternal biological families. I note that CSB emphasized that adoption by the child's paternal uncle would have the benefit of preserving a biological familial relationship for H.S. Legal custody to the child's former foster parents would have only enhanced the child's opportunity to maintain the familial connections the agency recognized as favorable.

{¶27} The legislature clearly believed that the availability of less restrictive custodial options which preserve parents' residual rights comprises a valid consideration relevant to the best interest of a child. Although that is merely one of five best interest factors the juvenile court must consider, I believe it is significant, particularly in a case with these facts. The agency emphasized the biological connections that H.S. would maintain should her paternal uncle be approved to adopt her. Those connections would also exist if the former foster parents, who mentored and supported Mother in regard to her relationship with the child, were awarded legal custody of H.S. Nevertheless, the evidence relating to the best interest factors as a whole support the juvenile court's award of permanent custody. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21 (prohibiting a reviewing court from substituting its own judgment, but rather recognizing the "presumption in favor of the finder of fact."). Accordingly, I concur in the majority's opinion.

APPEARANCES:

RANDALL C. BRAY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LAWRENCE DELINO, Attorney at Law, for Appellee.

AVIVA L. WILCHER, Guardian ad Litem.