[Cite as *In re R.G.*, 2023-Ohio-592.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: R.G.
    T.M.

C.A. Nos.     30453
                 30454

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.     DN 21 03 0184
                 DN 21 03 0185

DECISION AND JOURNAL ENTRY

Dated: March 1, 2023

---

FLAGG LANZINGER, Judge.

**{¶1}** Appellant, T.M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of R.G., born October 5, 2016; and T.M., born August 17, 2009. The children's fathers had minimal involvement in the trial court proceedings and did not appeal from the permanent custody judgment.

**{¶3}** During a prior involuntary case in 2018 and 2019, the juvenile court removed these children from Mother's custody because of her substance abuse problem. The children remained

placed outside her home in that case for more than one year. After Mother achieved a sustained period of sobriety, the children were returned to her legal custody and the case was closed.

{¶4} Several months later, however, CSB filed new complaints, alleging that R.G. and T.M. were neglected and dependent children because Mother had smoked crack cocaine and marijuana on the afternoon of March 9, 2021, while at least T.M. was present in the home. The juvenile court placed the children in the emergency temporary custody of CSB the same day.

{¶5} CSB's complaint alleged the following relevant facts. T.M. was at home, participating in an online class for school. During a break in his online class, T.M. left the room with his computer and its camera still on. School personnel who were monitoring T.M.'s online class saw Mother come into the room with a shoe box, from which she removed several items. When they saw Mother put a powdery substance into a glass pipe and smoke it, they contacted Akron Police.

{¶6} When the police came to her home later that day, Mother admitted that she had been smoking marijuana but denied smoking crack cocaine. Mother tested positive, however, for both marijuana and cocaine. Moreover, Mother later admitted that the children were removed from her custody because she had been "caught on [T.M.'s] camera" smoking crack cocaine.

{¶7} Mother stipulated to the facts alleged in the complaint and the juvenile court adjudicated the children dependent. The court placed the children in the temporary custody of CSB and adopted the case plan as an order of the court. The case plan focused primarily on Mother addressing her long-standing substance abuse problem. During the next several months, although Mother engaged in some drug treatment, she continued to test positive for cocaine.

{¶8} CSB moved for permanent custody, alleging that Mother had failed to remedy the conditions that caused the children to remain placed outside the home and that permanent custody

was in the children's best interest. *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1); R.C. 2151.414(D)(1). Mother and the children, through counsel, alternatively requested that the trial court grant Mother legal custody of the children or extend temporary custody for another six months.

{¶9} Following an evidentiary hearing, the trial court terminated parental rights and placed R.G. and T.M. in the permanent custody of CSB. Mother appeals and raises three assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FOUND THAT THE FIRST PRONG OF THE PERMANENT CUSTODY TEST WAS MET UNDER R.C. 2151.414(B)(1)(A) AND 2151.414(E)(1) BECAUSE THE TRIAL COURT'S DECISION WAS BASED ON AN INCORRECT FACT.

{¶10} Mother's first assignment of error is that the trial court's finding on the first prong of the permanent custody test was not supported by the evidence. Mother cites to Juv.R. 40(D)(3)(b)(iv) and a plain error standard of review. The permanent custody hearing was not held before a magistrate, however, but was held before the juvenile judge. By its explicit terms, Juv.R. 40 applies only to proceedings held before magistrates and is not applicable to this appeal. This Court generally reviews a permanent custody decision issued after a hearing before the trial judge to determine whether it was against the manifest weight of the evidence. *See*, *e.g*., *In re H.S.*, 9th Dist. Summit No. 30162, 2022-Ohio-1082, ¶ 8; *In re G.W.*, 9th Dist. Summit No. 29966, 2021-Ohio-3430, ¶ 10.

{¶11} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S*., 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} The trial court found that the first prong of the permanent custody test was satisfied in this case because the children could not be returned to Mother's custody within a reasonable time or should not be returned to her custody because she had failed "continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the child[ren]'s home." R.C. 2151.414(E)(1). Mother asserts that the trial court's judgment is based on an incorrect statement of fact: that the initial reason for the children's removal from the home was Mother's drug use "in the presence of her children."

{¶14} Mother does not dispute that the trial court had evidence before it that the children were removed from her custody because of her drug use. In fact, at the hearing, she admitted that she was "caught on camera" smoking crack cocaine while at least T.M. was present in the home. Her sole argument is about the meaning of the court's statement that she used drugs "in the presence of her children." Mother maintains that, because neither child was in the same room with her when she used the drugs, she did not use the drugs in the children's "presence."

{¶15} Mother cites no legal authority, or even a dictionary definition, to support her argument that the trial court's statement that the children were "in her presence" necessarily meant that her children were present in the same room as she, rather than present in her home, while she was using drugs. At least one of the children, T.M., was present in the home while Mother smoked crack cocaine during the afternoon while she was responsible for caring for him.

{¶16} Mother admittedly smoked cocaine in the room in which T.M. had just been participating in online schooling. Presumably, he returned to that room shortly afterward, after his break was over, and fumes were likely still in the air. Mother has failed to demonstrate that the trial court's statement about Mother using drugs in the "presence" of the children was erroneous.

{¶17} Moreover, this Court's review of the trial court's finding under R.C. 2151.414(E)(1) should not focus on this isolated statement made by the trial court. This Court instead examines whether the evidence supported the trial court's conclusion that Mother failed to substantially remedy the conditions that caused the initial removal of the children as well as their ongoing removal from the home. *See In re J.H.*, 9th Dist. Summit No. 24555, 2009-Ohio-2223, ¶ 9. Mother does not dispute that the children were removed from her custody and remained placed outside her custody because of her long-standing problem with substance abuse. She stipulated to an adjudication that they were dependent children for that reason.

{¶18} Mother further does not dispute that, at the time the agency filed its permanent custody motion and, even by the time of the hearing, she had not complied with the case plan requirement that she engage in regular drug treatment and demonstrate a period of sustained sobriety. Mother continued to test positive for cocaine throughout this case, as recently as the month before the hearing.

{¶19} More than one year into the second dependency case involving her children, Mother explicitly recognized that her drug use affected her parenting ability and stated that she wanted to get "clean" to be a better mother. She further testified that she had finally realized that she could not become sober without help, so she had reengaged in drug treatment shortly before the permanent custody hearing. Mother had no sober support system or any family that could assist her with her responsibilities. At the time of the hearing, Mother admitted that she continued to use cocaine and was still "trying to learn how to not use."

{¶20} Given the undisputed evidence that Mother had made minimal progress in this current case toward remedying her long-standing addiction to cocaine, she has failed to demonstrate any error in the trial court's first-prong finding under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(1). Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CONSIDER R.C. 2151.414(D)(1)(e) BECAUSE 2151.414(D)(1) REQUIRES ITS CONSIDERATION AND [AT] LEAST TWO OF THE FACTORS REFERENCED THEREIN ARE RELEVANT.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO [CSB] BECAUSE THAT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

**{¶21}** This Court will address Mother's second and third assignments of error together because they both challenge the trial court's determination that permanent custody was in the best interest of the children. At the permanent custody hearing and again on appeal, Mother has attempted to demonstrate that, because she is otherwise able to provide her children with food, clothing, housing, and other necessities, her drug use has no detrimental impact on her children. Mother relies on a line of cases from this Court, however, that do not involve analysis of the best interest of children but instead pertain to dependency adjudications of children. *See*, *e.g.*, *In re O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632; *In re R.S.*, 9th Dist. Summit No. 21177, 2003-Ohio-1594.

**{¶22}** Whether Mother's ongoing cocaine use negatively affected the children, and warranted the state's involvement in this case, is an issue that was already determined when the children were adjudicated dependent during June 2021. *See* R.C. 2151.04(C). The trial court's adjudication of the children as dependent "implicitly involve[d] a determination of the unsuitability" of Mother. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 23. Moreover, the order adjudicating R.G. and T.M. dependent children and placing them in the temporary custody of CSB was a final, appealable order at that time and cannot be challenged in this appeal. *See In re Murray,* 52 Ohio St.3d 155 (1990), syllabus; *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, ¶ 18.

**{¶23}** This Court will instead focus its best interest review on the factors that the court was explicitly required to consider under R.C. 2151.414(D)(1). In determining the best interest of the children R.C. 2151.414(D)(1) required the trial court to consider "all relevant factors, including, but not limited to, the following:"

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * * ;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

As required by R.C. 2151.414(D)(1), this Court will examine each of the "relevant" factors.

**{¶24}** Although Mother had a brief period of home visits with the children during this case, her interaction with the children was limited primarily to weekly two-hour visits with them that were supervised by CSB because Mother continued to test positive for cocaine. Mother interacted well with the children in a supervised setting and supervisors observed a loving bond between Mother and the children. The evidence was undisputed, however, that Mother continued to regularly use cocaine. Mother expressed an understanding that she must stop using to regain custody of the children and that she needed help to control her drug use. After having court-ordered case plan services available to her for more than one year, however, she had just recently reengaged drug treatment. Mother was not prepared to have the children transitioned back into her home.

**{¶25}** One month before the hearing, the trial court appointed independent counsel to represent the children because they did not agree with the recommendation of the guardian ad litem that they should not be returned to Mother's home. Both children loved Mother and wanted to return to her custody, but they could not return to a home in which Mother continued to use cocaine.

**{¶26}** The guardian ad litem, who had also been the guardian ad litem in the prior case involving these children, recommended that the children be placed in the permanent custody of CSB. He testified that he truly wanted Mother to achieve and maintain sobriety in this case, as she had in the prior case. The guardian ad litem had encouraged Mother to work toward again achieving sobriety but, based on his ongoing interactions with her, he did not believe that she was prepared to stop using cocaine at that time.

**{¶27}** The custodial history of the children included two separate periods, in the prior case and again in this case, during which the children were removed from Mother's custody because of her drug use. In each case, the children lived outside Mother's custody for more than one year. Although Mother asserts that this factor weighs in her favor because this case had not been pending for one year when the agency moved for permanent custody, and because she proved in the prior case that she could achieve sobriety and regain custody of her children, she did not demonstrate similar success in this case.

**{¶28}** By the time of the permanent custody hearing, this case had been pending for well over a year and Mother had made no progress toward reunification. During the past several years, the children had spent more than two years living outside Mother's custody and nearly four years moving in and out of temporary placements. R.G., who was not yet six years old at the time of the hearing, had spent most of his young life moving in and out of temporary placements.

{¶29} The children needed stability in their lives and Mother could not provide them with a legally secure permanent placement because of her ongoing cocaine use. CSB had been unable to find any suitable relatives who were willing and able to provide the children with a safe and secure permanent home.

{¶30} Finally, under R.C. 2151.414(D)(1)(e), the trial court was required to consider whether any of the factors set forth in R.C. 2151.414(E)(7) through (11) applied to the facts of this case. The trial court implicitly determined that none of those factors were relevant and this Court agrees.

{¶31} Mother, however, asserts that the trial court should have considered the factors set forth in R.C. 2151.414(E)(8) and (9), which provide:

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

{¶32} There was no evidence presented in this case that Mother had withheld medical treatment or food from the children, or that she had placed them at substantial risk of harm because of her drug use or rejected drug treatment two or more times. These factors are not relevant to this case, so the plain language of R.C. 2151.414(D)(1) did not require the trial court to consider them.

{¶33} In fact, Mother essentially concedes that these factors are not relevant to the facts of this case because she argues that she did not commit any of the acts set forth in these provisions. She instead suggests that these factors "tilt" in her favor because her drug use was not so bad that

she had neglected her children in the manner set forth in these provisions. Mother's argument does not comport with the plain meaning of the term "relevant" in R.C. 2151.414(D)(1), however. The factors were not relevant, so there was no reason for the trial court to consider them.

{¶34} Given the substantial evidence before the trial court that Mother could not provide her children with a suitable home, Mother has failed to demonstrate that the trial court lost its way in determining that permanent custody was in the best interest of R.G. and T.M. *See Eastley*, 2012-Ohio-2179, at ¶ 20. Mother's second and third assignments of error are overruled.

## III.

{¶35} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

JILL FLAGG LANZINGER
FOR THE COURT


SUTTON, P. J.
STEVENSON, J.
CONCUR.


APPEARANCES:

JAYSEN W. MERCER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

BENJAMIN AYERS, Attorney at Law, for Appellee.

DAVID M. LOWRY, Attorney at Law, for Appellee.

NEIL P. AGARWAL, Guardian ad Litem.